In the Matter of the Petition for Writ of Habeas Corpus for WILLIAM A. LOCKWOOD, Petitioner, v. W. PAUL RHODES, Warden of The New Castle Correctional Institution, and DR. ISAAC J. MACCOLLUM, HORACE B. OKIE and CHARLES L. PALMATARY, Members of the Board of Parole for the State of Delaware, Respondents.

288

(*February* 8, 1957.)

HERRMANN, J., sitting.

*Robert C. O'Hora* for the Petitioner.

*Frank O'Donnell, Jr.,* and *Alexander Greenfeld,* Deputies Attorney-General, for the Respondents.

Superior Court for New Castle County, No. 47, Civil Action, 1957.

HERRMANN, J.:

Two questions are presented: (1) How long does the State Board of Parole retain the power to revoke a parole and (2) did the Parole Board accord to the petitioner herein the statutory "opportunity of appearing" before revoking his parole?

There seems to be no substantial controversy as to these facts:

On March 9, 1949, the petitioner was sentenced by this Court to imprisonment for ten years upon a robbery conviction. He was imprisoned until July 25, 1955 when he was released on parole on condition that he remain under the "supervision" of the Board of Parole "until the expiration of the sentence on the 11th day of March 1956". The latter date was the "short time date", *i.e.*, the expiration of a reduced term computed upon the assumption that allowances of time for good behavior would be earned and accumulated. On March 13, 1956, the petitioner was arrested on a charge of receiving stolen goods and on March 15, 1956, the Parole Board issued its warrant for the detention of the petitioner as a parole violator.

On March 23, 1956, the Board convened and the petitioner was brought before it. The President of the Board read to the petitioner a letter received by the Board from the State Police in which were reported the details of an offense of receiving stolen goods alleged to have been committed by the petitioner on March 11, 1956. The letter also reported other misconduct by the petitioner prior to March 11, 1956 which, if true, would constitute violations of the conditions of parole. The petitioner neither admitted nor denied the contents of the letter report nor was he called upon to do so. He voiced objection to the Board's power over him after March 11, 1956. No witnesses were called to substantiate the contents of the letter nor was the petitioner offered the opportunity of calling witnesses. No prior notice of the "appearance" had been given to the petitioner nor was any written record made of the Board's proceedings and conclusions. The President of the Board announced the revoca-

tion of the petitioner's parole and the petitioner was dismissed from the room summarily without further discussion or consultation among the three members of the Board. The petitioner was not furnished with any written notice of the Board's action. He later ascertained from prison personnel, unofficially, that his accumulated "good time" had been forfeited and that he was now incarcerated for the unexpired portion of the original sentence of ten years.

The petitioner was sentenced to one year imprisonment upon his plea of guilty to the charge of receiving stolen goods on March 11, 1956. That term commenced on March 15, 1956 and, by reason of deduction of time for good behavior, it expired on January 13, 1957. Two days later this petition for writ of habeas corpus was filed asserting that the petitioner is unlawfully deprived of his liberty by order of the Parole Board. The petitioner asserts (1) that the Board had no power or jurisdiction to revoke his parole and (2) that he was wrongfully deprived of the hearing to which he was entitled prior to revocation of his parole.

The petitioner contends that the authority of the Parole Board over him ended for all purposes on March 11, 1956 because on that date his sentence and parole period expired. He contends that the Board could not thereafter incarcerate him for violation of parole even though the violation occurred prior to March 11. The respondents, on the other hand, contend that, notwithstanding the expiration of the "short time date" and the specified parole period on March 11, the control of the Parole Board continued until the expiration of the maximum sentence of ten years as to any violation committed prior to March 11.

I agree with the latter view.

Several Statutes are involved. By 11 *Del. C.* § 7501, as amended by 11 *Del. C.* §§ 6566-6567, it is provided that a prisoner in confinement shall be granted, for good conduct, a "diminution of the period of his confinement" or a "reduction * * *

from his sentence" according to a schedule set forth in the Statute. By 11 *Del. C.* § 7712, it is provided:

"(a) The reduction from the period of sentence \* \* \* in cases of felony, for good conduct during confinement, which is provided by the laws of this State, shall be allowed also to a prisoner while on parole, and the fulfillment of the conditions of parole shall be regarded as equivalent to good conduct during confinement for which a reduction of the term of the sentence shall be granted, \* \* \*.

"(b) The violation of the terms of parole, such as shall require the return of the prisoner to confinement by order of the Board of Parole, shall, upon the order of the Board, cause the forfeiture of all good time previously allowed in reduction of the term of sentence for good conduct, \* \* \*.

"(c)' Whoever, being a prisoner, violates the conditions of his parole within the term for which he has been sentenced, shall be imprisoned not more than one year, in addition to the unexpired portion of the term of the original sentence or sentences."

The key provision of the Statute, insofar as this case is concerned, appears in 11 *Del. C.* § 7710:

"\* \* \* A prisoner at liberty under parole shall be deemed to be still in the legal custody and under the control of the Board of Trustees or governing officer of the prison from which he or she was released, subject to the conditions of release granted by the Board of Parole, until the expiration of the term or terms specified in his or her sentence, but the prisoner shall be liable to return to the prison for violation of the terms of the release on parole. \* \* \*."

I am of the opinion that the words "term or terms specified in his or her sentence" should be construed to mean the maximum sentence as it was "specified" by the Court when it was imposed and not some lesser period as reduced by credits for "good time" allowances. I am cognizant of the ambiguity

that arises from the use of the word "prisoner". It is difficult indeed to apply the word "prisoner" to the petitioner after the expiration of his reduced time and parole period even if we look upon parole as "imprisonment at large". See *Commonwealth ex rel. Neiswender v. Dressell,* 89 *Pa. Dist. & Co. R.* 106, 109; *State ex rel. Murray v. Swenson,* 196 *Md.* 222, 76 *A.* 2d 150; *Ex parte Anderson,* 191 *Or.* 409, 229 *P.* 2d 633, 230 *P.* 2d 770, 29 *A. L. R.* 2d 1051. Nevertheless, I think that the ambiguity must be resolved in favor of the view that, by referring to the term "specified" in the sentence, the Legislature meant the maximum term of the sentence as pronounced by the Court and that it intended to prolong the arm of the Parole Board for the full period of the sentence as imposed.

This construction of the Statute is further indicated, I think, by the fact that the Legislature carefully used the words "reduction from sentence" and "reduction of sentence" when referring to allowances of time for good behavior. See 11 *Del. C.* §§ 7501, 6565-6567. Moreover, I do not consider it reasonable to assume that the Legislature intended to make so essential the element of speed in the detection of parole violations in view of the one-man staff it has provided for this state-wide Board. See 11 *Del. C.* § 7704. Indeed, if the law is construed as the petitioner urges, parole may be more reluctantly granted contrary to the humane purposes of our law and public policy. Compare *Zerbst v. Kidwell,* 304 *U. S.* 359, 58 *S. Ct.* 872, 82 *L. Ed.* 1399.

The desirability and practicability of the view herein adopted is supported by *United States ex rel. Anderson v. Anderson,* 8 *Cir.,* 76 *F.* 2d 375. Compare *Jarman v. United States,* 4 *Cir.,* 92 *F.* 2d 309; *Klinkner v. Squier,* 9 *Cir.,* 144 *F.* 2d 490.

The petitioner relies mainly upon *Anderson v. Williams,* 8 *Cir.,* 279 *F.* 822, and *Crooks v. Sanders,* 123 *S. C.* 28, 115 *S. E.* 760, 28 *A. L. R.* 940. The *Anderson* case is inapposite upon its facts because there the Parole Board did not act to revoke the parole until after the expiration of the time specified in the maximum sentence. Moreover, the *Anderson* case has been re-

versed by the Supreme Court. See *Anderson v. Corall,* 263 *U. S.* 193, 44 *S. Ct.* 43, 68 *L. Ed.* 247. While the *Crooks* case contains language from which the petitioner may derive comfort, it is not persuasive because statutory language such as ours was not there involved.

■ Accordingly, it is held that the Board of Parole has the power and jurisdiction to revoke the petitioner's parole at any time during the ten-year period of the maximum sentence imposed by the Court, for a parole violation committed prior to the expiration of the specified parole period. Therefore, the Board had the power and jurisdiction to revoke the petitioner's parole on March 23, 1956[1].

■ The second problem involved in this case is less difficult. The kind of hearing which the Parole Board is required to accord to a parolee prior to revoking his parole is the subject of a Statute and of a recent decision of this Court.

After establishing procedures for returning a parolee to custody on charges of violating the conditions of parole, the Statute provides, 11 *Del. C.* § 7714:

"At the next meeting of the Board of Parole held at any institution after the return of any prisoner to such institution for alleged violation of the conditions of parole, the prisoner shall be given the opportunity of appearing before the Board of Parole and in case the prisoner can establish his innocence of violating the terms of parole or in case the Board finds there is reasonable doubt of such violation, the original order of release on parole shall again become effective and the prisoner shall be continued on parole with any change of conditions that the Board may deem advisable, but if the prisoner is deemed guilty, he shall be returned to the institution for the unexpired portion of the sentence to be served. * * *."

---

[1] In view of this discussion, it would appear advisable for the Board to discontinue its practice of referring to the "short time date" as the date of the "expiration of the sentence".

The provision requiring "opportunity of appearing" was construed by this Court in *State v. Boggs*, 1955, 10 *Terry* 277, 114 *A.* 2d 663, 664. It was there stated that, although this Statute did not require a formal hearing or trial, it did contemplate notice of the charge, the opportunity to be represented by counsel, the right to call witnesses, the taking of testimony under oath and a written record of the Board's proceedings and findings. A similar conclusion was reached in *Fleming v. Tate*, 81 *U. S. App. D. C.* 205, 156 *F.* 2d 848, 850, which involved a Federal Parole Statute likewise requiring an opportunity for the parolee to "appear". The Court there stated:

"What did Congress have in mind when it said that when so accused the parolee 'shall be given an opportunity to appear before said Board'? It could not have meant merely his physical presence. Such a statutory requirement must have had a purpose. The only conceivable purpose is that the parolee should be enabled to present whatever he may have to present pertinent to the question raised by his alleged act. Obviously, the Board is to ascertain the facts, and decide what effect should be given them. Its discretion in continuing or revoking parole is uncontrolled, but clearly this statutory provision means that it cannot act in disregard of the facts or refuse to hear argument.

\* \* \* \* \* \*

"The parole system is an enlightened effort on the part of society to rehabilitate convicted criminals. Certainly no circumstance could further that purpose to a greater extent than a firm belief on the part of such offenders in the impartial, unhurried, objective, and thorough processes of the machinery of the law. And hardly any circumstance could with greater effect impede progress toward the desired end than a belief on their part that the machinery of the law is arbitrary, technical, too busy, or impervious to facts. The crisis in the rehabilitation of these men may very well be the treatment which they receive when accused of an act violative of the terms of what must be to them a precious privilege. It is true that certainty of penalty for guilt is

one of the chief elements in successful law enforcement, but of equal importance in that success is an undeviating, dispassionate adherence to facts as wholly controlling. Congress must have had this in mind when it required that a parolee thus accused must have an opportunity to appear before the Board."

The respondents here concede that the petitioner was not accorded a sufficient hearing within the requirements of 11 *Del. C.* § 7714 and *State v. Boggs, supra.* Thus, it appears that the State Board of Parole completely ignored the standards stated for its guidance by this Court in the *Boggs* case before the published opinion in that case was a year old. Be that as it may, it is manifest that the Board deprived the petitioner of the right of hearing granted to him by the Statute[2].

It does not follow from that conclusion, however, that the petitioner is entitled to a discharge from custody. I find no unequivocal assertion anywhere in this record that, if given a sufficient hearing, the petitioner would be able to demonstrate that he did not violate his parole before it expired on March 11, 1956. Since the Court will not enter a futile order, such allegation must appear before the petitioner will be ordered released from custody for failure to grant a sufficient hearing. See *Fleenor v. Hammond*, 6 Cir., 116 *F.* 2d 982, 132 *A. L. R.* 1241.

Accordingly, the petitioner will be granted leave to amend his petition in this proceeding, if he is able to do so, to allege under oath that if granted a proper hearing he will be able to demonstrate that he did not violate the conditions of his parole before the expiration thereof. If and when that is done, the petitioner will be discharged from imprisonment and restraint without prejudice to the right of the Board of Parole to take

---

[2]In view of this conclusion, it is not necessary to consider the constitutional question of whether the conduct of the Board constituted a deprivation of due process of law. See *Fleenor v. Hammond*, 6 Cir., 116 F. 2d 982, 132 A. L. R. 1241; *Ex parte Anderson*, 191 Or. 409, 229 P. 2d 633, 230 P. 2d 770, Annotation 29 A. L. R. 2d 1074, *et seq.*

such other proceedings as are not inconsistent herewith. Unless and until the petition shall be thus amended, the petitioner shall stand remanded.

An appropriate Order may be submitted on notice.