BONOCIO ROMÁN CANCEL, peticionario y apelante, *v.* GERARDO DELGADO, ETC., demandado y apelado.

Número 12856.

*Sometido:* 20 de abril de 1961. *Resuelto:* 12 de mayo de 1961.

*Bonocio Román Cancel, pro se; J. B. Fernández Badillo, Procurador General de Puerto Rico y Juan A. Faría, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El 30 de junio de 1949 el peticionario apelante Bonocio Román Cancel fue sentenciado por el Tribunal Superior, Sala de Bayamón, a cumplir penas consecutivas de presidio

de 15 a 20 años, 3 a 4 años y 15 a 20 años. En 19 de junio de 1957 el Gobernador de Puerto Rico le conmutó dichas sentencias por una pena de 12 a 44 años de presidio. (¹) Le fue concedida la libertad bajo palabra en 18 de septiembre de 1958.

En julio de 1959 se presentó una querella contra el peticionario ante la Junta de Libertad bajo Palabra. El querellante fue oído en una vista preliminar, sin estar presente el peticionario, y sobre el resultado de la vista se rindió un informe confidencial a dicho organismo. En 31 de agosto de 1959 se celebró una vista ante uno de los miembros de la Junta y durante la misma se practicó prueba. El apelante estuvo presente en esta audiencia. Un mes después se celebró otra vista ante el Presidente de la Junta, sin la comparecencia del acusado, en la cual se escuchó nuevamente al querellante. Finalmente, la Junta en pleno celebró otra vista en 5 de octubre, a la cual compareció el apelante, y "se le oyó, se expresó y se defendió". Como resultado de todos los procedimientos habidos, la Junta resolvió en esta última fecha revocar la libertad bajo palabra de que disfrutaba el apelante, y ordenó su arresto inmediato e ingreso en la Penitenciaría Estatal. El arresto fue cumplimentado una semana después.

Román Cancel radicó una petición ante este Tribunal que intituló "mandamus" alegando que se encuentra privado ilegalmente de su libertad. Consideramos la petición como una de hábeas corpus, (²) y expedimos el mandamiento corres-

(¹) El ejercicio de la clemencia ejecutiva eliminó cualquier posible ataque a dichas sentencias por el fundamento de no permitir un margen de fluctuación razonable entre el término mínimo y el término máximo. *Sánchez* v. *Ángeli*, 80 D.P.R. 154 (1957); *Serrano* v. *Delgado*, 80 D.P.R. 221 (1958); opinión disidente en *Pueblo* v. *Tribunal Superior*, 78 D.P.R. 143, 149 (1955).

(²) Aun cuando la libertad bajo palabra es una forma de cumplir la sentencia fuera de los límites de la prisión, el hábeas corpus es el recurso procedente para determinar la legalidad del reencarcelamiento cuando se revoca dicha libertad bajo palabra, ya que evidentemente al confinado se le está restringiendo físicamente de su libertad. En *Emanuelli* v. *Tri-*

pondiente para que el demandado compareciera ante el Tribunal Superior, Sala de San Juan. El Tribunal Superior declaró sin lugar el recurso, y contra dicha sentencia se entabló recurso de apelación, imputándose al tribunal la comisión de los errores siguientes: (1) la desestimación de la petición es errónea pues se demostró que al peticionario se le privó de la oportunidad de estar presente en la vista en que la Junta de Libertad bajo Palabra oyó la declaración del querellante sobre los hechos constitutivos de la violación de las condiciones de la libertad bajo palabra que le había sido concedida, y que en definitiva motivaron la revocación de ésta; (2) al no resolver que la resolución de dicha Junta revocándole la libertad bajo palabra es nula por haber sido acordada en una reunión a la cual concurrieron solamente dos miembros de dicho organismo; y (3) al no resolver que la revocación ordenada era nula por haber transcurrido más de cuarenta y cinco días desde la fecha de la presentación de la querella.

## I

La sección 8 de la Ley Núm. 266 de 4 de abril de 1946 (Leyes, pág. 551, 4 L.P.R.A. sec. 608) dispone que:

"La Junta, o cualquiera de sus miembros, queda autorizada, a su discreción y previa constancia de probable infracción de la libertad bajo palabra, para ordenar el arresto y reclusión de cualquier reo que estuviere en libertad bajo palabra a la institución de donde el mismo procediere; y dicha orden será cumplimentada por cualquier oficial de la Junta o por cualquier oficial o agente del orden público, como si se tratara de una orden judicial.

*bunal*, 74 D.P.R. 541, 548–549 (1953), resolvimos que una actuación nula de la Junta concediendo la libertad bajo palabra no surte efecto legal alguno, y puede ser revisada judicialmente por el Estado mediante solicitud para que se expida orden de encarcelación. Ya en *Garay v. Junta*, 74 D.P.R. 559 (1953), habíamos establecido que el mandamus es el recurso adecuado para obligar a la Junta a resolver si concede o niega la libertad bajo palabra. Sobre la procedencia del hábeas corpus en casos de revocación de libertad bajo palabra, véase en general 39 C.J.S. *Hábeas Corpus*, sec. 26(d), pág. 495 y siguientes.

"La orden de reclusión de que habla el párrafo anterior autorizará a los funcionarios a quienes fuere dirigida para recluir a dicho reo bajo custodia efectiva en la penitenciaría, correspondiente. Mientras se efectuare la vista, que más adelante se autoriza, sobre cualquier imputación de violación de la libertad bajo palabra, el preso permanecerá recluido en dicha institución. *Disponiéndose,* que, la Junta deberá, dentro de los cuarenta y cinco (45) días a partir de la fecha del arresto del liberado, celebrar una vista, en la que éste tendrá derecho a ser oído en su defensa, para resolver en relación con la alegada infracción a la libertad bajo palabra y determinar si procede o no la revocación de dicha libertad bajo palabra y ordenar la reclusión definitiva del liberado por el resto del término de su sentencia que le faltare por cumplir. *Disponiéndose, además,* que, si la Junta no celebrare la vista dentro del término fijado en esta ley, la alegada infracción a la libertad, bajo palabra se considerará como no cometida y el liberado tendrá derecho a ser puesto en libertad inmediatamente previa orden al efecto expedida por el Presidente de la Junta o por la persona que esté actuando por él. *Disponiéndose, además,* que si resultare que cualquier preso cuyo retorno a presidio haya sido ordenado por la Junta ha infringido las disposiciones de su libertad bajo palabra, el período comprendido entre la emisión de dicho mandamiento y la fecha de su arresto no le será contado como parte de la condena a que hubiere sido sentenciado.

"La Junta promulgará las reglas y reglamentos que crea convenientes para el mejor cumplimiento de lo dispuesto en esta sección."

Un examen de esta disposición revela que: (*a*) para ordenar el arresto y reclusión de un reo que estuviere en libertad bajo palabra, basta con que así se disponga por la Junta o cualquiera de sus miembros "previa constancia" de una probable infracción de las condiciones de la libertad, sin que para que se ordene el arresto sea necesario que se oiga previamente al reo; (*b*) dentro de cuarenta y cinco días de efectuado el arresto, deberá celebrarse una vista para resolver en relación con la alegada infracción y determinar

sobre la procedencia de la revocación de la libertad a prueba, en la que el reo *tendrá derecho a ser oído en su defensa.*

El Reglamento de la Junta de Libertad bajo Palabra en vigor desde el 29 de noviembre de 1946, dispone que (4 R. & R. P. R. sec. 613–2 (b) (13) ) :

"Cuando una persona que esté en libertad bajo palabra observare mala conducta o infringiere las reglas que gobiernan sus actividades, e informada que fuere de ello la Junta, se ordenará el arresto y reclusión provisional de dicha persona hasta que el resultado de una investigación, que de esos hechos se ordenará, permita determinar la actuación procedente. Investigados los hechos y rendido el correspondiente informe, la Junta, dentro de los cuarenta y cinco (45) días a partir del día en que empezó la reclusión provisional, celebrará una vista para dar al confinado la oportunidad de ser oído en su defensa. Después de celebrada la vista, la Junta resolverá si ordena o no la revocación del privilegio de libertad bajo palabra.

"La Junta, o cualesquiera de sus miembros, podrá, en cualquier momento, ordenar una investigación de las actividades de una o más personas en libertad bajo palabra y su arresto provisional, si así lo demandara la buena marcha y necesaria eficiencia del sistema de libertad bajo palabra."

De todo lo expuesto se deduce que cuando se recibe una querella en la Junta sobre una alegada infracción de las condiciones bajo las cuales el reo disfruta de la libertad bajo palabra, se ordena una investigación de los hechos, y una vez recibido el informe correspondiente, se celebra una vista "para dar al confinado la oportunidad de ser oído en su defensa". Con toda seguridad esta disposición dándole al reo la oportunidad de ser oído fue concedida por el legislador considerando que la revocación de la libertad bajo palabra produce como consecuencias inmediatas la reclusión definitiva del liberado por el balance del término de la sentencia que le faltare por cumplir y la eliminación como parte del término del cumplimiento de la sentencia del período transcurrido entre el mandamiento concediendo la libertad bajo palabra y la fecha del nuevo arresto. *Mayo* v. *Lukers,*

53 So.2d 916 (Fla. 1951); Hendrick, *Parole—Gain Time Credits Forfeited Upon Revocation*, 30 N.C.L.R. 187 (1952); cf. 27 Minn. L. Rev. 200 (1942–43). Además, tiene el efecto de restringir al reo físicamente, en caso de que se ordenara su reencarcelamiento.

No es necesario que nos detengamos a examinar si el reo tendría el derecho constitucional, como parte del debido procedimiento de ley garantizado por nuestra Constitución de que se le concediera una audiencia antes de proceder a revocarle la libertad bajo palabra que pueda habérsele concedido, ya que de todas formas el estatuto local, como hemos expuesto, dispone para la celebración de una vista para oírle en su defensa.(3) Sin embargo, es necesario aclarar que esta vista puede ser de carácter rápido e informal, Cf. *Hiatt* v. *Compagna*, 178 F.2d 42 (Cir. 5, 1949), *United States ex rel. De Lucia* v. *O'Donovan*, 178 F.2d 876 (Cir. 7, 1950), certiorari denegado 340 U.S. 886 (1950), ya que es inconcebible que tenga que estar rodeada de todos los requisitos de una audiencia judicial. Consideraciones de orden práctico, entre otras, militan contra tal posición,(4) que impedirían a la

---

(3) La regla mayoritaria entre las cortes americanas, incluyendo el Tribunal Supremo de Estados Unidos (*Burns* v. *United States*, 287 U.S. 216 (1932)), se pronuncia en el sentido de que para la revocación de la libertad bajo palabra no existen limitaciones de índole constitucional. Esta posición se justifica por cuatro distintos fundamentos: que la libertad bajo palabra (1) es un acto de gracia o clemencia que puede ser retirado discrecionalmente por el estado; (2) participa de la naturaleza de un contrato entre el confinado y el estado, una de cuyas condiciones es que puede ser revocado a discreción de este último; (3) es una forma de cumplir la sentencia (cf. *Emanuelli* v. *Tribunal*, 74 D.P.R. 541 (1953)); y (4) es un incidente posterior a la sentencia después de un proceso durante el cual se le concedió al acusado toda la protección que requiere la Constitución. Para una discusión sobre este aspecto, véanse *Right to notice and hearing before revocation of suspension of sentence, parole, conditional pardon or probation*, 29 A.L.R.2d 1074 (1953); *Parole Revocation Procedures*, 65 Harv. L. Rev. 309 (1951); Weihofer, *Revoking Probation, Parole or Pardon Without a Hearing*, 32 J. Crim. L. and Criminology 531 (1942).

(4) El informe anual de la Junta de Libertad bajo Palabra correspondiente al año 1959–60 detalla las estadísticas del número de casos.

junta o cuerpo administrativo que entiende en estos asuntos darle atención rápida a tales casos, especialmente tomando en cuenta que bajo el estatuto local, si se ha ordenado el arresto del reo, la vista debe celebrarse dentro de 45 días de practicado el mismo. Claro está que la vista debe estar rodeada de ciertos requisitos mínimos, de forma que no sea contraria a los principios más elementales de orden y justicia.[5] Por supuesto que el reo debe: (a) ser notificado de los hechos que se le imputan como causa para la revocación, para que pueda prepararse adecuadamente para refutar los cargos que se le hacen; (b) proporcionársele la oportunidad de prepararse para hacerle frente a los cargos y de presentar prueba a su favor; (c) ofrecérsele la oportunidad de estar presente en todas las vistas que se celebren,

en los cuales se concedió la libertad bajo palabra y de los casos en que se revocó, en la forma siguiente:

| Año | Casos Concedidos | Casos Revocados |
|---|---|---|
| 1946–47 | 339 | 12 |
| 1947–48 | 192 | 15 |
| 1948–49 | 365 | 17 |
| 1949–50 | 562 | 41 |
| 1950–51 | 622 | 73 |
| 1951–52 | 1,068 | 78 |
| 1952–53 | 1,479 | 129 |
| 1953–54 | 1,239 | 200 |
| 1954–55 | 1,039 | 174 |
| 1955–56 | 609 | 131 |
| 1956–57 | 544 | 87 |
| 1957–58 | 665 | 79 |
| 1958–59 | 495 | 78 |
| 1959–60 | 576 | 86 |
| Total | 9,794 | 1,200 |

Resulta, pues, que en 14 años de funcionamiento de la Junta el por ciento de revocaciones es de 12.25. Véase, Bates, *On the Uses of Parole Restrictions*, 33 J. Crim. L. & Criminology 435 (1943).

[5] Para una discusión de los elementos de la vista para la revocación, véanse, la anotación y los artículos citados en el escolio 3, y además, Flandrick, *Revocation of Conditional Liberty*, 28 So. Cal. L. Rev. 158, 169–74 (1955); *Necessity of Due Process to Revoke Parole*, 24 Minn. L. Rev. 584 (1939–40); Belshaw, *Elements of Hearing in Revocation of Parole Proceedings*, 37 J. Crim. L. & Criminology 308 (1946–47); 41 Ill. L. Rev. 277 (1946–47).

de escuchar los testimonios en su contra y de contrainterrogar a los testigos contrarios; y (d) dársele la oportunidad de estar representado por abogado, si así lo desea.(⁶) *State* v. *Zolantakis*, 259 Pac. 1044, 1047 (1927); *People* v. *Hill*, 300 N.Y.S. 532 (1937); *Crenshaw* v. *State*, 161 A.2d 669; *Fleming* v. *Tate*, 156 F.2d 848 (1946); *United States* v. *Hollien*, 105 F. Supp. 987 (1952); *People* v. *McMann*, 184 N.Y.S.2d 922 (1959); *In re McLeod*, 83 N.W.2d 340 (Mich., 1957); *Lockwood* v. *Rhodes*, 129 A.2d 549 (Del., 1957); *Hooper* v. *State*, 297 S.W.2d 78 (Tenn., 1956); *McDaniel* v. *State*, 254 S.W.2d 785 (Tex., 1953); *Martin* v. *Warden of Penitentiary*, 182 F. Supp. 391 (1960). Advertimos, sin embargo, que no se trata de una vista judicial y que la misma no se gobierna estrictamente por las reglas de evidencia, y que el funcionario que recibe la prueba tiene considerable discreción en cuanto al orden de la presentación de la prueba, y sobre la extensión de los interrogatorios y contrainterrogatorios.

Comprendemos que posiblemente el resultado inmediato de esta opinión sea aumentar el ya recargado calendario de la Junta de Libertad bajo Palabra, pero nos parece que este es un precio mínimo a pagarse comparado con los beneficios indudables que representa el establecer un procedimiento rodeado de adecuadas garantías para el individuo. No se trata de meras formalidades, sino que está en juego la libertad del individuo. Ante un valor humano que escapa toda apreciación, como es la libertad individual, no podemos detenernos ante consideraciones de orden práctico o de índole económica, por el costo que esto pueda representar para el

---

(⁶) *Fleming* v. *Tate*, 156 F.2d 848 (1946); contra, *Lopex* v. *Madigan*, 174 F. Supp. 919 (Cal. 1959). Generalmente en aquellos casos en que se ha negado la oportunidad de estar asistido por abogado, si el reo así lo desea, el estatuto provee meramente que éste tendrá derecho a comparecer (right to appear). *Federal Convict on Conditional Release Held to Have no Right to Counsel at Parole Board Revocation Hearing*, 108 U. Pa. L. Rev. 423 (1960). Nuestro estatuto es mucho más amplio y concede "vista para ser oído en su defensa".

Estado. Estamos seguros que cuando el legislador concedió una "vista para ser oído en su defensa" al reo a quien se intenta privar de su libertad bajo palabra, no se trataba de un formalismo para llenar ciertas apariencias democráticas. Y al traducir su pensamiento, no vemos cómo podamos negar los requisitos mínimos antes apuntados. [7]

Hemos examinado la prueba presentada ante el tribunal de instancia y estamos satisfechos de que el peticionario no estuvo presente en la vista durante la cual declaró el querellante, y que, por tanto, no tuvo la oportunidad de contrainterrogarle. El hecho de que posiblemente se le advirtiera de los cargos en su contra no subsana esta deficiencia de la vista.

## II

 No hay duda de que de conformidad con las disposiciones de la sección 8 de la Ley sobre Libertad bajo Palabra transcrita anteriormente corresponde a la Junta, y no a cualquiera de sus miembros individualmente, adoptar y dictar la resolución sobre revocación de la libertad concedida. En el presente caso la prueba demuestra que si bien una de las vistas se celebró ante uno de los miembros únicamente, la Junta en pleno oyó al peticionario en la audiencia del día 5 de octubre, e inmediatamente adoptó la resolución de revocación con la anuencia de todos sus miembros presentes. Como cuestión de realidad lo indispensable es que el acuerdo para decretar la revocación se apruebe con el voto afirmativo de por lo menos dos de los tres miembros que componen el organismo. La vista para escuchar la prueba sobre la alegada violación de las condiciones de la libertad bajo palabra no tiene que celebrarse necesariamente ante la Junta, o alguno de sus miembros. Puede tener lugar ante un exa-

---

[7] El Informe del Comité del Gobernador para los Estudios de los Derechos Civiles en Puerto Rico de 1959 recomienda que "La Comisión de Reforma Penal debe revisar el funcionamiento de la libertad bajo palabra y las sentencias indeterminadas y probatorias que actualmente adolecen de defectos importantes". (Pág. 187.)

minador que reciba la prueba. Es importante, sin embargo, que la resolución de revocación se adopte por la Junta, y que al hacerlo, se hagan las correspondientes determinaciones de hecho, después de una cuidadosa ponderación de la prueba. Sólo así se pondría a los tribunales en condiciones satisfactorias de revisar cualquier dictamen desfavorable al reo. Esta revisión incluye dos aspectos: (1) cuestiones de derecho, sustantivas y procesales; y (2) claro abuso de discreción al revocar la libertad a prueba. Para poder lograr el procedimiento de revisión en una forma efectiva se hace necesario que la Junta remita al tribunal el expediente de los documentos originales del incidente de revocación, y el récord de la vista celebrada, si existe, conjuntamente con la relación de hechos probados a que nos hemos referido. En esta forma, es posible que en la mayoría de los recursos el tribunal no crea necesario proceder a oir prueba. Cf. *Medina* v. *Pons*, 81 D.P.R. 1, 6–9 (1959).

En *People ex rel. Seiler* v. *Hill*, 181 N.E. 295 (Ill., 1932) se impugnó la orden de revocación de la libertad bajo palabra concedida al peticionario. Aunque la junta estatal estaba compuesta por diez miembros, las audiencias se celebraron ante dos y tres miembros solamente. Al denegar la impugnación el tribunal indicó que este reparo tendría validez si se hubiese demostrado que el acuerdo de revocación se había adoptado por una minoría, pero el diligenciado (*return*) demostraba que se había aprobado por todos los miembros. Se aprobó la práctica de dividir el trabajo de celebración de las vistas entre los miembros, siempre que el acuerdo sobre revocación se adoptase por una mayoría de los miembros del organismo. Cf. *León* v. *Comisión Industrial*, 58 D.P.R. 905 (1941) y *Santini* v. *Comisión Industrial*, 57 D.P.R. 412 (1940).

No se cometió el error apuntado.

## III

■ El tercer error es claramente frívolo. El requisito de que la vista se celebre dentro de 45 días es aplicable únicamente a los casos en que, recibida la querella, se ordena el arresto y reclusión del reo. En el presente caso el peticionario no fue arrestado antes de la celebración de la vista. La limitación impuesta por el legislador obedece sin duda al propósito de evitar que un reo esté confinado indefinidamente sin la celebración de vista, ante la posibilidad de que la Junta le exonere una vez le escuche. Cf. Art. II, sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.

En vista de que el primer error fue cometido, *se revocará la sentencia dictada por el Tribunal Superior de San Juan, en 20 de abril de 1960, y se decretará la excarcelación del peticionario Bonocio Román Cancel, sujeto a cualquier procedimiento ulterior ante la Junta de Libertad bajo Palabra.*