COMISIONADO DE SEGUROS DE PUERTO RICO, demandante y recurrente, *v.* JOHN BRADLEY y JOHN BRADLEY, INC., demandados y recurridos.

*Número:* O-68-89     *Resuelto:* 28 de octubre de 1969

*Rafael A. Rivera Cruz, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados del recurrente; *Benicio Sánchez Castaño, Benicio Sánchez Rivera, Ana R. Rodríguez Olazagasti* y *Gustavo Adolfo Del Toro,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se cuestiona en este recurso, no totalmente pero sí en cierta medida, la facultad del Comisionado de Seguros de investigar los archivos, cuentas y papeles de los corredores de seguros.

Los hechos pueden resumirse como sigue: John Bradley y John Bradley, Inc., son corredores de seguros con licencia para ejercer en Puerto Rico. De una investigación que el Comisionado practicó en los libros y récords de una determinada agencia de seguros surgió la posibilidad o la sospecha de que entre dicha agencia, los demandados y un garage nombrado Metro Auto Repair Center, Inc., existiesen relaciones en violación de la ley. Por tal motivo y porque

hacía más de cinco años que no se investigaban las operaciones de los demandados el Comisionado envió a un examinador a practicar una investigación de aquéllos.

El examinador, Sr. Ortiz, se personó en las oficinas de los demandados con el propósito de llevar a cabo dicha investigación y le entregó al Sr. Bradley una carta del Comisionado de Seguros dirigida a aquél la cual, en su parte pertinente, leía como sigue:

"El portador de la presente, Sr. Rafael W. Ortiz, Examinador de nuestra Oficina, ha sido designado por mí para que practique una investigación de las operaciones, transacciones, negocios, actividades, sistemas, libros, registros, contratos, documentos, certificados, escrituras, poderes, expedientes, archivos, correspondencia, memorandos, notas, pagarés, cuentas, cheques, estados de cuentas bancarias, capital, acciones, *todo y cualquier asunto en su poder o bajo dominio relacionado con su negocio o que en alguna manera pudiera estar conectado con el mismo.*" (Énfasis nuestro.)

Cuando Ortiz llegó a la oficina de Bradley con éste estaba su abogado el Lcdo. Licari. Ortiz entregó la carta a Bradley. Este la leyó y le dijo a Ortiz que procediese con la investigación. Declara Ortiz que "entonces cuando pregunté por el sistema de archivos, etc., dónde estaban las cosas, le dije a la secretaria particular de él, del Sr. Bradley, que quería ver unos archivos en específico que tenía allí al lado la secretaria." La secretaria consultó con Bradley y entonces llamaron a Ortiz a la oficina de Bradley. Al entrar a dicha oficina el abogado Licari tenía en sus manos la carta del Comisionado y objetó a que se prosiguiese con la investigación en la forma en que Ortiz se proponía hacerla. En síntesis, la posición de Bradley y de Licari fue que el examinador podía examinar aquellos archivos que ellos ponían a sus órdenes pero que no podía examinar otros porque—decían ellos—ésos no tenían nada que ver con el negocio de seguros.

Como el examinador insistía en ver los archivos que le negaban, y la cuenta de banco de Bradley lo que también le negaron, se creó un *impasse* que hizo necesario que Ortiz se comunicara por teléfono con su jefe Carrasquillo. Luego de consultar con el Comisionado, Carrasquillo le contestó por teléfono a Ortiz que lo esperase en la oficina de Bradley que él iría para allá. Carrasquillo llevó consigo una máquina grabadora y allí se grabó la conversación que tuvo lugar entre Bradley, Licari, Carrasquillo y Ortiz. [1]

La antes mencionada grabación comienza con un parlamento del Lcdo. Licari en el cual él expresa cuál es su nombre, que representa al Sr. John Bradley y a John Bradley, Inc., que el Comisionado de Seguros ha enviado un examinador a esa oficina, que le han dicho al examinador que puede examinar los archivos relacionados con el negocio de seguros pero que no puede examinar otros que no están relacionados con seguros.

El meollo de la controversia de este litigio se encuentra en la discusión que allí tuvo lugar. [2] Partes significativas de esa discusión son las siguientes:

Luego del Lcdo. Licari expresar que se podían ver los archivos relacionados con seguros pero no los que no estaban relacionados con seguros, Carrasquillo expresó: "Bien, el problema consiste en que nosotros tenemos que saber cuales son los que conciernen al negocio de seguros y cuales no." El señor Licari insiste en su posición antes dicha y Carrasquillo expresa: "Ahí hay dos archivos. Deseamos verlos ambos." A esto Licari contesta "Rehusamos permitirles que vean cualquiera de esos dos archivos." Bradley y Licari explicaron que esos dos archivos pertenecían a una firma llamada

[1] La cinta magnetofónica que contiene dicha conversación fue presentada en evidencia en la vista administrativa por los demandados y dicha conversación consta transcrita en la transcripción de evidencia de la vista.

[2] Dicha conversación se celebró en inglés. Hemos traducido las citas directas e indirectas que de la misma hacemos.

Richar International. Carrasquillo expresó que él tenía que cerciorarse de si en realidad esos archivos tenían o no que ver con el negocio de seguros objeto de la investigación.

En relación con el deseo de los examinadores de ver la cuenta de banco también hubo otra discusión. Carrasquillo le preguntó a Bradley que si él recibía comisiones y Bradley contestó que solamente sobre pólizas de vida y ofreció decirle a Carrasquillo las cantidades. Carrasquillo solicitó ver la cuenta de banco de Bradley. Este expresó que él tenía como seis cuentas distintas; que lo único (del negocio) que se mezclaba con su cuenta personal eran las comisiones que recibía por pólizas de vida. Licari añadió que lo demás iba a la cuenta corporativa. Carrasquillo insistió en ver la cuenta de banco y expresó que si no la examinaba él no podría saber si en dicha cuenta solamente estaban las comisiones de pólizas de vida o si había otras incluidas. A esto Bradley se negó.

Licari insistió en que los examinadores podían ver los archivos relacionados con seguros pero que no los dejarían ver los archivos de asuntos personales de Bradley a menos que el Comisionado indicase específicamente que su pesquisa en esos papeles estaba conectada con el negocio de seguros. Entonces Carrasquillo dijo que sería específico. Dijo que ellos tenían información en el sentido de que Bradley tenía relaciones comerciales con una agencia de seguros y con un garage; que había unas transacciones que no estaban claras y que tenía una carta de la Fidelity General Insurance. (³)

Añadió Carrasquillo que el Comisionado deseaba saber, en descargo de sus deberes, si eso era correcto o no. Ante las objeciones del Ledo. Licari, Carrasquillo expresó que el Comisionado tenía suficientes bases para creer que Bradley

---

(³)El Código de Seguros prohibe a los corredores tener intereses económicos o relaciones contractuales con agentes de seguros. Más adelante en esta opinión citamos el lenguaje de la sección pertinente. 26 L.P.R.A. sec. 918(10).

estaba violando la ley. Al entrar Carrasquillo en detalles sobre esas relaciones alegadamente ilegales, Bradley negó que eso fuese cierto. Licari preguntó que porqué no se presentaba una querella formal y Carrasquillo contestó que no había querella, que se trataba de que el Comisionado quería hacer la investigación. Licari reiteró que ellos no permitirían que los investigadores examinasen "asuntos privados"; que solamente podían ver lo relacionado con el negocio de seguros. Carrasquillo insistió en que era necesario ver los archivos que le negaban. Licari expresó que bajo ninguna circunstancia le permitiría verlos. Carrasquillo estuvo de acuerdo con Licari en que solamente podían investigar los papeles relacionados con seguros pero, añadió, que ellos (los examinadores) tenían que quedar satisfechos en beneficio del Comisionado y de la ley de que en efecto examinaban lo que se relacionaba con seguros y de que lo que dejaban de examinar no se relacionaba con seguros. Argumentó:

"Quiero decir, para ver si se relacionan con los seguros o no. Si se relacionan con seguros examinaremos esos papeles, si no se relacionan no tendremos nada que ver con esos documentos o archivos. Pero tenemos que averiguar si se relacionan con seguros o no."

A esto Licari contestó que no estaba de acuerdo con esa posición y Carrasquillo dijo que en ese caso ellos tendrían que irse e informar al Comisionado. Licari dijo "Tomen acción legal" y Carrasquillo contestó "Seguro".

Con motivo de lo anterior, en 21 de marzo de 1967, el Comisionado de Seguros emitió una orden citando a John Bradley y a John Bradley, Inc., a una vista que se celebraría en el salón de audiencias de la Oficina del Comisionado el 3 de mayo de 1967 a las 9 de la mañana, a los fines de que mostrasen causas por las cuales no se les debía aplicar las sanciones que dispone el Código de Seguros de Puerto Rico.

En dicha orden y en la vista se cumplieron con los requisitos del debido procedimiento de ley, a saber: (1) los querellados fueron avisados previamente de la vista con tiempo razonablemente suficiente para prepararse; (2) el aviso contenía la fecha, hora y lugar en que se celebraría la vista; (3) en el aviso se hizo referencia a la autoridad de ley en virtud de la cual se procedía; (4) se hizo referencia específica a las secciones o artículos de ley envueltos; y (5) se hizo una breve y sencilla relación del asunto envuelto. (⁴)

A la vista los querellados comparecieron personalmente y mediante abogado. Tuvieron oportunidad de contestar los cargos contra ellos formulados y de argumentar y presentar evidencia en su favor. Los querellados mantuvieron su posición antes descrita sobre qué archivos, cuentas y papeles ponían a disposición del Comisionado de Seguros y cuáles no.

El Comisionado encontró que los querellados habían violado los Arts. 2.150 y 2.160 del Código de Seguros, 26 L.P.R.A. secs. 215 y 216, y ordenó la suspensión por el término de un año de sus licencias de corredores de seguros. Los querellados recurrieron al Tribunal Superior, Sala de San Juan, y éste dejó sin efecto la resolución del Comisionado de Seguros y ordenó a los querellados allí recurrentes a poner a disposición del Comisionado "los récords y archivos de su negocio de seguros" a los fines de la investigación y ordenó además que el negocio de los querellados continuase operando durante la investigación.

---

(⁴)En el derecho administrativo hay casos excepcionales en que debido a situaciones de emergencia o a razones de orden público, se ha sostenido jurisprudencialmente que no se requería cumplir con todos los requisitos antes relacionados. *Cervecería Corona, Inc.* v. *Srio. de Obras Públicas*, 97 D.P.R. 44 (1969); *Belmonte* v. *Mercado Reverón, Admor.*, 95 D.P.R. 257 (1967); *Pueblo* v. *Tribunal Superior*, 86 D.P.R. 834, 840 (1962). Para situaciones en que se ha exigido vista pública véase *López, Alcalde* v. *Tribunal Superior*, 90 D.P.R. 304 (1964); *Román* v. *Delgado*, 82 D.P.R. 598 (1961) y *López* v. *Junta Planificación*, 80 D.P.R. 646, 667 (1958).

V. además Davis, *Administrative Law* (1959), Cap. 8 y del mismo autor *Administrative Law Treatise*, Vol. 1, Cap. 8.

El razonamiento central del Tribunal Superior que motivó su decisión se encuentra en los siguientes dos párrafos de su opinión:

"Toda persona que sea investigada deberá presentar y hacer accessibles al Comisionado o sus examinadores las *cuentas, expedientes, documentos, archivos, capital y asuntos en su poder o bajo su dominio relativos a la materia objeto de la investigación,* Código de Seguros, art. 2.160(1) o sea, al negocio de seguros. [Énfasis en el original.]

Nada hemos encontrado en esos preceptos de donde se pueda inferir que el Comisionado de Seguros o sus examinadores puedan requerir a un corredor de seguros que les muestre su cuenta personal bancaria y los archivos pertenecientes a otras corporaciones, no relacionados con el negocio de seguros."

En otras palabras, el Tribunal Superior sostuvo la posición de los demandados de que son ellos los jueces de qué archivos, papeles y cuentas puede el Comisionado examinar y cuáles no.

De dicho fallo el Comisionado, a través de la Oficina del Procurador General, recurre ante nos vía *certiorari.* Señala los siguientes tres errores.

"1. Cometió error de hecho y de derecho el Tribunal Superior, Sala de San Juan, al resolver que John Bradley y John Bradley, Inc. ni se han negado ni se niegan a permitir que el Comisionado de Seguros investigue todo lo relacionado con el negocio de seguros.

2. Cometió error de hecho y de derecho el Tribunal Superior, Sala de San Juan, al resolver que el Comisionado de Seguros o sus examinadores no pueden requerir, por carecer de facultad en ley para ello, a un corredor de seguros que les muestre su cuenta personal bancaria donde se depositan las comisiones obtenidas en la venta de seguros.

3. Cometió error de hecho y de derecho el Tribunal Superior, Sala de San Juan, al resolver que el Comisionado de Seguros o sus examinadores no pueden requerir, por carecer de facultad en ley para ello, a un corredor de seguros que les muestre todos los archivos que tiene en su oficina, incluyendo varios archivos

que dicho corredor alega pertenecen a otras corporaciones no relacionadas con el negocio de seguros."

Los errores señalados se cometieron. A continuación nos explicamos.

A estas alturas ya no se cuestiona la verdad palmaria de que el negocio de seguros está afectado de interés público y que por ello el Estado tiene un interés legítimo en reglamentarlo y supervisarlo.[5] Los demandados no lo hacen sino que así lo reconocen.

Para la solución del caso, debemos recurrir en primer lugar al derecho positivo. Para hacerle posible cumplir las obligaciones que el Código de Seguros le impone, el legislador confirió al Comisionado de Seguros amplias facultades y las "que resulten razonablemente implícitas" de aquellas. 26 L.P.R.A. sec. 203(1). Dicha sección también dispone en su inciso (3) que:

"El Comisionado podrá llevar a cabo las investigaciones e inspecciones que considere convenientes para determinar si una persona ha violado cualquier disposición de este título o para obtener información útil a la administración legal de cualquiera de dichas disposiciones."

En cuanto a corredores de seguros en particular el Código dispone en su Art. 2.150 que el Comisionado, con el fin de determinar si se cumple con la ley, podrá "inspeccionar las *cuentas, archivos*, documentos, negocios y operaciones relacionadas con seguros de los corredores." 26 L.P.R.A. sec. 215. (Énfasis nuestro.)

En cuanto al acceso a los documentos, el Código dispone en su Art. 2.160 que:

---

[5] *German Alliance Ins. Co.* v. *Lewis*, 233 U.S. 389 (1914); *O'Gorman & Young* v. *Hartford Fire Ins. Co.*, 282 U.S. 251 (1931); Vance, *On Insurance*, 3ra. ed., pág. 36; Couch, *On Insurance* 2d, Vol. 2, sec. 21.1; Appleman, *Insurance Law and Practice*, Vol. 19, sec. 10321. Para el historial del Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957; 26 L.P.R.A. secs. 101 y ss.; véase *Diario de Sesiones*, Cámara, 12 de marzo de 1957, Sesión Ordinaria, Vol. IX, Tomo 2, pág. 560.

"Toda persona que sea investigada, sus funcionarios, empleados, agentes y representantes deberán presentar y hacer libremente accesibles al Comisionado o sus examinadores *las cuentas,* expedientes, documentos, *archivos,* capital y asuntos en su poder o bajo su dominio relativos a la materia objeto de la investigación, y deberán en cualquier otra forma facilitar la investigación." 26 L.P.R.A. sec. 216(1). (Énfasis nuestro.)

En su Art. 9.180 el Código prohibe a un corredor de seguros "ser accionista, miembro, socio, agente o empleado de ningún asegurador o agente autorizado para hacer o que esté haciendo negocios en Puerto Rico, o tener interés económico o financiero o relación contractual con un asegurador o agente autorizado para hacer o haciendo negocios en Puerto Rico, excepto por razón de comisiones ganadas o como asegurado." 26 L.P.R.A. sec. 918(10).

Por último, el Código expresamente faculta al Comisionado para denegar, suspender o revocar licencias por violaciones intencionales de cualquier disposición del Código o de cualquier reglamento u orden legal del Comisionado. 26 L.P.R.A. sec. 946.

No hay duda de que el derecho legislado faculta al Comisionado para llevar a cabo las investigaciones de las cuales la del caso de autos es un ejemplo. ¿Cuál es la tónica que la jurisprudencia ha dado a las facultades investigativas de las agencias administrativas? Ya en *Cooperativa Cafeteros P.R.* v. *Colón Torres,* 84 D.P.R. 278 (1961) discutimos esto. Allí dijimos a la pág. 284:

"Se ha establecido jurisprudencialmente que las agencias administrativas tienen amplios poderes para solicitar información e investigar los organismos que la ley le autoriza reglamentar y supervisar. Originalmente se había sostenido que las agencias administrativas no podían hacer expediciones de pesca en los organismos que reglamentaban, *Fed. Trade Comm.* v. *Amer. Tobacco Co.,* 264 U.S. 298 (1924), pero la tendencia desde que se resolvió el caso de *United States* v. *Morton Salt*

*Co.,* 338 U.S. 632 (1950) es reconocer a las agencias administrativas amplios poderes para solicitar información de e investigar los organismos que éstas regulan y supervisan."

En *United States* v. *Morton Salt Co.,* 338 U.S. 632 (1950) el Tribunal Supremo de los Estados Unidos expresó a la pág. 652:

"Desde luego una investigación gubernamental . . . puede ser tan abarcadora y tan ajena a la materia bajo examen que exceda el poder de investigación. *Federal Trade Comm'n* v. *American Tobacco Co.,* supra. Pero es suficiente si la investigación está dentro de la autoridad de la agencia, el requerimiento no es demasiado indefinido y la información solicitada es razonablemente pertinente. 'La esencia de la protección consiste en el requisito de que la divulgación requerida no sea irrazonable.' *Oklahoma Press Publishing Co.* v. *Walling,* 327 U.S. 186, 208."

Lo determinante en cuanto a qué documentos, récords, archivos y cuentas pueden ser examinados es si los mismos tienen una relación pertinente con el asunto que es objeto de una investigación autorizada por la ley. *Detweiler Bros.* v. *Walling,* 157 F.2d 841, 843 (1946) *certiorari* denegado 330 U.S. 819 (1947). Puede decirse que la investigación es válida si está dentro de los poderes del organismo público que la lleva a cabo, si sus términos no son demasiado vagos e imprecisos y si la información que se busca es pertinente a las funciones o deberes de dicho organismo público. No es necesario que la preceda la presentación de una querella formal o de una demanda o de una acusación criminal. El propósito de la investigación es precisamente averiguar si se ha violado la ley y de su resultado puede depender si el organismo público concernido procede o no a la formulación de una querella, demanda o acusación, según sea el caso. Davis, *Administrative Law Treatise,* Vol. 1, Cap. 3, y en especial las secciones 3.02, 3.06 y 3.14 y Jaffe & Nathanson, *Administrative Law, Cases and Materials,* 2da. ed. (1961) Cap. 5.

Como se dijo en *Link* v. *N.L.R.B.,* 330 F.2d 437 (1964)

"es irrazonable en extremo insistir en que el resultado esté disponible antes de comenzarse la investigación."

Reduciendo ahora nuestro enfoque a casos de seguros en particular, es muy ilustrativo a los fines de la cuestión aquí envuelta el caso de *Bankers Life and Casualty Co.* v. *McCarthy*, 137 N.E.2d 398 (1956). En este caso McCarthy, Director de Seguros de Illinois, procediendo bajo una autoridad estatutaria sustancialmente igual a la nuestra, comenzó una investigación de la mencionada compañía de seguros y en el curso de la misma el presidente de la compañía se negó a permitir que el Director examinase una cuenta que mantenía separada de las cuentas regulares y que denominaba con el nombre de "App." Alegaba la compañía que se trataba de un fondo de Montepío que nada tenía que ver con su negocio de seguros y reforzaba su posición con el hecho de que en un litigio particular, en el cual el presidente de la compañía era parte, pero no el Estado de Illinois ni sus funcionarios, otro tribunal había decretado que esa cuenta era de tal naturaleza que no debía incluirse en los estados financieros de la compañía y que no estaba sujeta a la ley de seguros.

El Tribunal de Apelaciones de Illinois rechazó esa posición y resolvió que esa cuenta reflejaba alguna clase de transacciones o tratos entre la compañía y los agentes de seguros y que el Director de Seguros podía examinarla con el fin de determinar si dichas transacciones violaban la letra o el espíritu de la ley o de los reglamentos de seguros. Nótese que se rechazó la posición de la compañía de ser ella quien determinase qué cuentas podía ver el Director de Seguros y cuáles no podía ver.

En *Commissioner of Insurance* v. *The First National Bank of Boston*, 223 N.E.2d 684 (1967) se requirió a un banco para que compareciese a una vista y diese testimonio en relación con tratos comerciales suyos—un préstamo hecho a la compañía de seguros bajo investigación. El banco objetó. El Tribunal sostuvo al Comisionado. Expresó que el deber del

Comisionado de administrar la Ley de Seguros conlleva el deber de supervisar las operaciones de las compañías de seguros y que estaba facultado para investigar las relaciones de dichas compañías y los bancos. Dijo el Tribunal: "Si algún entendido existía entre el banco y Benson [el Presidente de la compañía de seguros] eso sería una parte de todas las circunstancias que el Comisionado puede propiamente investigar." El Tribunal ordenó al banco a comparecer y contestar.

◼ *Bankers Life*, supra, demuestra que el poder investigativo del Comisionado no se interpreta restrictivamente para limitarlo solamente a operaciones de seguros propiamente dichas pues se abrió a investigación la cuenta del Montepío de la compañía; y *Commissioner* v. *First National Bank of Boston*, supra, demuestra que dicho poder investigativo tampoco se limita solamente a compañías dedicadas a seguros, sino que, cuando las circunstancias lo justifican, puede extenderse a otras entidades o empresas que hayan tenido relaciones comerciales o económicas con compañías de seguros— en ese caso el Banco de Boston.

En casos de investigaciones hechas por organismos públicos el hecho de que determinados papeles pertenezcan a un tercero no los pone fuera del alcance de la investigación válidamente hecha dentro del ámbito de la autoridad conferida por el estatuto al organismo administrativo investigador. Véase por ejemplo, *Application of Waterfront Commission of New York Harbor*, 160 A.2d 832 (1960); *Pope & Talbott, Inc.* v. *Smith*, 340 P.2d 960 (1959). De lo anterior resulta claro que si un tercero no puede oponerse a revelar datos que estén dentro del ámbito del poder investigativo del organismo público (por estar relacionados con el asunto o la materia sobre el cual el organismo tiene jurisdicción) menos puede oponerse una persona o una entidad—en este caso, un corredor de seguros—que está claramente bajo la jurisdicción del

organismo investigador—la Oficina del Comisionado de Seguros.

En *N.L.R.B.* v. *United Aircraft Corp.*, 200 F.Supp. 48 (1961) un caso en que la persona investigada sostenía, como en el caso de autos sostienen los demandados, que siempre puso a disposición de los investigadores los récords relacionados con el asunto en controversia, el Tribunal dijo:

"Una persona o una corporación que está siendo investigada no puede colocarse en la posición de dar solamente la información que ella elija ofrecer. Como regla general, es la información que no se ofrece, precisamente la que es de mayor pertinencia cuando se ha incurrido en prácticas ilegales."

■ El Comisionado de Seguros puede investigar los archivos, papeles y cuentas que interesa y, desde luego, sólo podrá utilizar aquellos que tienen una relación pertinente con los deberes y facultades que le impone y le confiere el Código de Seguros de Puerto Rico.

*En vista de lo anterior se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 14 de febrero de 1968, y se confirmará la resolución del Comisionado de Seguros objeto de este recurso.*

El Juez Asociado Señor Hernández Matos no intervino.