COMMISSIONER OF INSURANCE *vs.* THE FIRST NATIONAL BANK OF BOSTON.

Suffolk.    December 8, 1966. — February 14, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Insurance,* Commissioner of Insurance, Receivership of insurance company. *Witness,* Compelling giving of evidence. *State Administrative Procedure Act.*

The duties of the Commissioner of Insurance under G. L. c. 175, § 3A, extend to insurance companies in receivership as well as to companies having a going business, and the investigatory powers set forth in § 4 are both appropriate and necessary in discharging such duties.    [80]

The provision of G. L. c. 175, § 4, that "A report of an examination of any [insurance] company made [by the Commissioner of Insurance] under this section may, as far as material . . ., be admitted, in the discretion of the court, in any judicial proceeding brought by or in behalf of the Commissioner, as prima facie evidence of the facts stated in such report," does not apply to private litigation brought by him qua receiver of a company.    [80–81]

In furtherance of his broad investigatory duties and powers under G. L. c. 175, §§ 3A, 4, the Commissioner of Insurance was entitled to conduct a hearing under § 4 into the affairs of an insurance company which had failed less than three years after it had been organized and had entered into a loan agreement with a bank indispensable to the company's operation, and was entitled to summon the bank as a witness under § 8A; the facts that the Commissioner had been appointed receiver of the company and that the results of the hearing might be useful to him as receiver did not destroy his powers as Commissioner.    [81]

Where it appeared that the Commissioner of Insurance commenced a hearing under G. L. c. 175, § 4, into the affairs of an insurance company of which he had been appointed receiver, that the hearing officer stated that the hearing was "not an adversary proceeding but . . . [was] an investigatory hearing" and called a number of witnesses, and that a bank which had entered into a loan agreement with the company refused to comply with a subpoena issued by the Division of Insurance to appear and testify at the hearing, the facts that the counsel to the receiver assisted in the presentation of the evidence at the hearing, that questions there were directed toward establishing an "understanding" between the bank and the president of the company, and that the receiver had demanded payment from the bank of money which he claimed had been wrongfully diverted from the company did not impel this court to decline as a matter of discretion to grant an application by the Commissioner under c. 233, § 10, to compel the bank to comply with the subpoena; the application should be granted. [81–83]

Section 11 of G. L. c. 30A, the State Administrative Procedure Act, did not apply to an investigatory hearing held by the Commissioner of Insurance under c. 175, § 4. [83]

APPLICATION to compel attendance of witnesses, filed in the Supreme Judicial Court for the county of Suffolk on January 13, 1966.

The case was reserved and reported by *Spalding,* J.

*Paul N. Gollub,* Assistant Attorney General, for the petitioner.

*Edward B. Hanify* (*William H. Wolf & C. Dean Dusseault* with him) for the respondent.

SPALDING, J. The Commissioner of Insurance (Commissioner) filed an application in the County Court under G. L. c. 233, § 10, to compel The First National Bank of Boston (Bank) to appear and give testimony at a hearing conducted by him. Following the filing of an answer by the Bank, the parties agreed upon a statement containing all the facts material to the issues to be decided. Thereafter, at the request of the parties, the single justice reported the case, without decision, to the full court on the application, the answer and the statement of agreed facts.

Suffolk Insurance Company (Suffolk) was organized under the laws of this Commonwealth on March 12, 1962. Both First National Industries, Inc. (Industries) and E. & E. Investment Corporation (E. & E.) are Massachusetts corporations. About November 14, 1963, Industries ac-

quired the majority interest in the stock of both Suffolk and
E. & E. The Bank entered into a collateral security agree-
ment with Industries and E. & E. on June 25, 1963. There-
after the Bank entered into a loan agreement with Indus-
tries, Suffolk, E. & E. and three foreign corporations. The
loan agreement was intended to supersede the collateral
security agreement of June 25, 1963. The operation of this
loan agreement may be summarized as follows: An in-
sured desiring to obtain financing for his insurance pre-
miums would execute and deliver to an insurance broker a
note plus a cash down payment. The broker would then
assign the note to E. & E. and deliver it, together with the
down payment, in exchange for drafts payable to the in-
surance companies involved. E. & E. would then assign the
note to Industries which would in turn assign it to the Bank
as collateral security under the loan agreement. Under
this agreement the Bank was to make loans solely to Indus-
tries which was referred to as the "Borrower." All of the
other parties to the loan agreement were referred to as sub-
sidiaries of the "Borrower."

On November 25, 1964, the commissioner applied in the
County Court for the appointment of a receiver for Suffolk.
The petition recited that Suffolk was insolvent and should
be liquidated as prescribed in G. L. c. 175, § 180C. On
December 17, 1964, an interlocutory decree was entered ap-
pointing the Commissioner permanent receiver of Suffolk.
Subsequently Alexander E. Finger was appointed counsel
to the receiver. The decree appointing him fixed his com-
pensation, it having been represented to the court that he
was to be employed on a "full time basis."

On October 18, 1965, a subpoena was issued by the Divi-
sion of Insurance to the Bank to appear at a hearing before
the Commissioner on October 25, 1965. Present at this
hearing, among others, were Roger E. Ingalls, First Deputy
Commissioner of Insurance, Joseph F. Ciccio, General
Counsel for the Department of Insurance, and Alexander E.
Finger, whose position was described as "amicus curiae to
the Department and counsel for the Receiver."

At the outset of the hearing the Deputy Commissioner made the following statement: "This is a hearing which is being held under the authority of Chapter 175, Section 4 of the General Laws, which states that the Commissioner of Insurance or any person authorized by him may make examinations or investigations as provided in said Section 4 and shall have free access to all of the records of the insurance company for the purpose of verifying the books and records relating to the business of said company. . . . The Commissioner of Insurance has designated me, Roger E. Ingalls, First Deputy Commissioner of Insurance, to hold a hearing for the examination and investigation into the affairs, transactions, and circumstances pertaining to the organization, administration and conduct of Suffolk Insurance Company. Accordingly, this hearing is now being held and will be conducted pursuant to the provisions of the Administrative Procedure Act. . . . Chapter 30A of the General Laws. This hearing is not an Adversary Proceeding but is an investigatory hearing. The Division of Insurance has summonsed various witnesses in order to assist in the purpose of the hearing, and they may be interrogated under oath, relative to the affairs of the Suffolk Insurance Company. Therefore, there will not be any cross examination. However, in order to have each witness testify correctly and accurately with reference to any questions asked of him by representatives of this Department, the witness will be given an opportunity at the conclusion of his interrogation to clarify or explain any statement concerning which he testified and such statement may be made by the witness in a narration form or may be made by interrogation by his own attorney. In order to assist in the orderly presentation of the facts, the Commissioner has directed that Attorney Alexander E. Finger, who is presently Counsel to the Receiver of Suffolk Insurance Company, assist the Department in the presentation of the evidence and testimony."

The Bank first responded to the subpoena on November 5, 1965, when it appeared through counsel and produced cer-

tain documents. On November 10 the Bank again appeared through counsel in response to the subpoena and produced John F. McCarthy as a witness, together with additional documents. McCarthy was interrogated at length by Mr. Finger concerning the Bank's dealings with various corporations controlled by Ely S. Benson. The Bank agreed to appear on November 15 and to produce Robert P. Kelsey, Jr., as a witness at that time.

On November 15, counsel for the Bank appeared at the hearing and stated: "I have, as counsel for the Bank, advised the Bank and its officers and employees not to produce any further documents and not to offer any further testimony at these hearings until a Court has had an opportunity to determine the power of the Commissioner to hold these hearings, the scope and purpose of such hearings, if they may properly be held at all, and the manner and extent to which Mr. Finger may properly participate in the conduct of these hearings."

The Bank refused to produce any further witnesses or give any further testimony at the hearings "pending the judicial determination referred to in the aforesaid statement of its counsel." Thereupon the Commissioner commenced the present proceeding to compel compliance with the subpoena.

General Laws c. 175, § 4, under which the Commissioner purports to conduct the present hearing, provides that the Commissioner, "whenever he determines it to be prudent, . . . shall personally, or by his deputy or examiner, visit each domestic company, and thoroughly inspect and examine its affairs to ascertain its financial condition, its ability to fulfil its obligations, whether it has complied with the law, and any other facts relating to its business methods and management, and the equity of its dealings with its policyholders. . . . [H]e . . . may summon and examine under oath any person who, he believes, has knowledge of the affairs, transactions or circumstances being examined or investigated." The Bank contends that this statute is inapplicable with respect to companies which are in receiver-

ship and that, even if it does empower the Commissioner to examine companies in receivership, the power was improperly used in this case to further his interest as the receiver. The Bank also contends that, even if its appearance could be compelled, the circumstances in this case are such that we should decline to do so as a matter of discretion.

1. The Commissioner's investigatory powers under § 4 extend to "each domestic company." On its face, the statute does not limit their extent to going businesses. The Bank contends, however, that the scope of the powers must be limited to the purposes they are intended to serve, and that the powers, so viewed, are unnecessary and inappropriate in respect to companies in receivership. See *Attorney Gen.* v. *Brissenden,* 271 Mass. 172, 178.

The investigatory powers of § 4 are to ascertain (1) financial condition, (2) ability to fulfil obligations, (3) whether the law has been complied with, (4) other facts relating to business methods and management, and (5) equity of dealings with policyholders. The Bank asserts that the Commissioner need use these powers only for the purpose of instituting injunctive, receivership, rehabilitation and liquidation proceedings against going companies.[1] We do not agree. Certainly the powers are useful to the Commissioner in the institution of such proceedings. But the Commissioner's duties extend beyond the institution of proceedings against going companies. Under c. 175, § 3A, "The commissioner shall administer and enforce the provisions of [G. L. cc. 175, 176 and 178]." The Commissioner's obligation to administer and enforce the insurance statutes requires him, when he deems it prudent, to determine whether such portions of c. 175 as § 46 (preference of certain claims), § 63 (investment of capital and reserve), § 65 (mortgage loans), § 72 (dividends), and § 90C (guaranty fund) have been complied with. Furthermore, we are of opinion that the Commissioner's obligations of administration under § 3A entail a duty to exercise a broad surveil-

---

[1] See G. L. c. 175, §§ 3B, 6, 180B and 180C.

lance over the operations of companies with a view to instituting procedures and recommending changes which might prevent or reduce the likelihood of unsuccessful ventures such as Suffolk's.

The Bank contends that if we construe § 4 to apply to companies in receivership, then G. L. c. 175, § 180, would be unnecessary. Section 180 provides that the Commissioner "shall annually or oftener examine the accounts and transactions of all receivers of insolvent companies," and for those purposes "shall have free access to . . . books and papers of such receivers . . . and shall have all the powers conferred by section four." Even if we assume that the provisions of § 180 make § 4 inapplicable to the "transactions of . . . receivers," the § 4 powers would, nevertheless, apply to transactions which occurred before the receiver was appointed. We find no indication that the Commissioner's obligation to examine circumstances which existed prior to the receivership ceases upon the appointment of the receiver. We are of opinion that the Commissioner's duties under § 3A to administer and enforce the insurance statutes extend to companies in receivership as well as going businesses, and that the investigatory powers of § 4 are both appropriate and necessary in discharging these duties.

2. Several sections of G. L. c. 175 contemplate the appointment of the Commissioner as the receiver of certain companies.[2] The Bank contends that the Commissioner, having been appointed a receiver, can no longer use the powers of § 4. The Bank directs our attention to that portion of § 4 which provides, "A report of an examination of any company made under this section may, as far as material . . ., be admitted, in the discretion of the court, in any judicial proceeding brought by or in behalf of the commissioner, as prima facie evidence of the facts stated in such report." The Bank asserts that if the Commissioner were allowed to retain his § 4 powers after his appointment as

---

[2] See G. L. c. 175, §§ 6, 179, 180B, 180C.

receiver, the above provision would have constitutional infirmities. See *Meunier's Case,* 319 Mass. 421, 427. But that provision applies only to proceedings "brought by or in behalf of the commissioner." We are of opinion that it does not extend to private litigation brought by him qua receiver. Thus construed, the constitutional doubts advanced by the Bank are unfounded.

The Bank also contends that the Commissioner is abusing his powers under § 4 by investigating Suffolk and subpoenaing the Bank to further his interests as a receiver. Receivers have no investigatory powers similar to those granted by § 4, and the insurance statutes do not purport to enlarge the receiver's powers in cases where the Commissioner is appointed. See G. L. c. 175, § 180C. Of course, his dual capacity as both Commissioner and receiver make it inevitable that the results of investigations made pursuant to his powers as Commissioner might be useful to him, as receiver, in private litigation. But we are of opinion that in cases where he uses his powers for purposes related to his duties as Commissioner, the fact that the results may also be useful to him as the receiver does not destroy those powers.

We are not persuaded that this hearing has been brought or that the Bank has been subpoenaed solely to further the Commissioner's interest qua receiver. As noted above, the Commissioner has rather broad investigatory duties and powers under §§ 3A and 4. Such powers are to be exercised "whenever he determines it to be prudent." In the present case, Suffolk failed slightly less than three years after it was organized. The Bank was the lender in a loan agreement which was indispensable to Suffolk's operation. We hold that in this situation the Commissioner is entitled to conduct a hearing under § 4 and to summon the Bank as a witness under § 8A.

3. General Laws c. 233, § 10, under which this petition is brought, provides that "A justice of . . . [this] court, upon application of a tribunal authorized to summon but not to compel the attendance of witnesses and the giving of

testimony before it, *may, in his discretion,* compel the attendance of such witnesses and the giving of testimony . . ." (emphasis supplied). The Bank contends that even if the Commissioner has the power to summon the Bank we should decline to compel its attendance as a matter of discretion. The Bank directs our attention to the facts that: (1) Mr. Finger, the counsel to the receiver, is assisting in the presentation of evidence; (2) the questions have in part been directed toward establishing an "understanding" between the Bank and Benson, the president of Suffolk; and (3) the receiver of Suffolk, in June, 1966, demanded payment of $757,760.43 from the Bank for amounts which he claimed were wrongfully diverted from Suffolk.

It is, of course, impossible to ascertain the exact motives which have caused the Commissioner to hold the hearing and summon the Bank or to know whether he would have followed the same course if he were not also Suffolk's receiver. But we have said that there are appropriate purposes for which the hearing might have been held and the Bank summoned. The fact that a number of witnesses other than the Bank were called indicates that the hearing is not essentially an adversary proceeding against the Bank. We are of opinion that the facts relied upon by the Bank are not such as to render unfair an otherwise proper investigation. Mr. Finger, as counsel for the Division of Insurance as well as for the receiver, is presumably well acquainted with the Suffolk situation and an appropriate person to assist at the hearing. If any "understanding" did exist between the Bank and Benson, it would be a part of the total circumstances which the Commissioner might properly investigate under § 4. And the fact that the receiver has made a demand upon the Bank does not relieve the Commissioner of his duties in relation to the Suffolk situation.

This case is unlike *Osborne, petitioner,* 141 Mass. 307, upon which the Bank heavily relies. In that case, the Common Council of Boston petitioned this court to compel the attendance of a former member of the water board at a hearing. At the time of the petition, the member whose at-

tendance was sought had been removed from office and a suit had been brought against him by the city of Boston. The court refused in its discretion to compel his attendance, saying, at p. 308, ''The only object which would be accomplished by a further investigation is to procure evidence to be used in this suit.'' Here there are valid purposes for the Commissioner to investigate Suffolk and subpoena the Bank.

Finally, the Bank suggests that the hearing has not been held pursuant to § 11 of G. L. c. 30A, the State Administrative Procedure Act. But § 11 applies only to adjudicatory proceedings. See G. L. c. 30A, § 1. The Commissioner's deputy stated at the outset that the hearing is investigatory, and we are not persuaded that this statement was incorrect.

We are of opinion that in the exercise of the court's discretion under G. L. c. 233, § 10, the application of the Commissioner to compel compliance with the subpoena on the part of the Bank should be granted.

*So ordered.*