COMMISSIONER OF INSURANCE OF PUERTO RICO, Plaintiff and Appellant, *v.* JOHN BRADLEY and JOHN BRADLEY, INC., Defendants and Appellees.

No. O-68-89.        Decided October 28, 1969.

*Rafael A. Rivera Cruz, Solicitor General,* and *Américo Serra, Assistant Solicitor General;* for appellant. *Benicio Sánchez Castaño, Benicio Sánchez Rivera, Ana R. Rodríguez Olazagasti,* and *Gustavo Adolfo Del Toro* for appellees.

MR. JUSTICE RIGAU delivered the opinion of the Court.

In this appeal, the power of the Commissioner of Insurance to examine the files, accounts, and papers of the insurance brokers is questioned, not entirely but to a certain extent.

The facts may be summarized as follows: John Bradley and John Bradley, Inc., are insurance brokers with license to transact insurance in Puerto Rico. From an examination conducted by the Commissioner of the books and records of a certain insurance agency there arose the possibility or suspicion that between said agency, the defendants, and a garage called Metro Auto Repair Center, Inc., there existed relations in violation of the law. For that reason and because the defendants' affairs had not been examined for more than five years, the Commissioner sent an examiner to conduct an examination thereof.

The examiner, Ortiz, appeared in defendants' office for the purpose of conducting said examination and delivered to Mr. Bradley a letter from the Commissioner of Insurance addressed to him, which, in its pertinent part, read as follows:

"The bearer of this letter, Rafael W. Ortiz, Examiner of our Office, has been designated by me to conduct an examination of the affairs, transactions, businesses, activities, systems, books, registers, contracts, documents, certificates, deeds, powers of attorney, records, files, correspondence, memorandums, notes, promissory notes, accounts, checks, bank statements, assets, shares of stocks, *all and every matter in your possession or dominion connected with your business or which in any manner could be connected therewith.*" (Italics ours.)

When Ortiz arrived at Bradley's office, Mr. Licari, his attorney, was with him. Ortiz delivered the letter to Bradley. The latter read it and told Ortiz to proceed with the examination. Ortiz declared that "then when I asked about the filing system, etc., where the things were, I told his private secretary, Bradley's, that I wanted to see some specific files which

were there beside the secretary." The secretary consulted Bradley and then they called Ortiz to Bradley's office. When Ortiz entered said office Mr. Licari was holding the Commissioner's letter in his hand and objected to the continuation of the examination in the manner that Ortiz planned to conduct it. In synthesis, Bradley's and Licari's position was that the examiner was at liberty to look into those files that they made available to him, but that he could not examine other files because—they said—those had nothing to do with the insurance business.

As the examiner insisted on examining the files to which he was denied access, and Bradley's bank account, to which they also refused, an impasse occurred, it being necessary for Ortiz to make a telephone call to his boss Carrasquillo. After consulting with the Commissioner, Carrasquillo told Ortiz on the telephone to wait for him at Bradley's office, that he was going there. Carrasquillo took a tape recorder with him and the conversation between Bradley, Licari, Carrasquillo, and Ortiz was recorded there.[1]

The aforementioned tape recording commences with a parley by Mr. Licari in which he states his name, that he represents John Bradley and John Bradley, Inc., that the Commissioner of Insurance has sent an examiner to that office, that the examiner has been told that he may examine the files that deal with the insurance business, but that he cannot examine other files which do not deal with insurance.

The gist of the controversy in this litigation appears in the discussion which took place there.[2] Significant parts of said discussion are the following:

After Mr. Licari stated that the files that deal with insurance could be examined, but that those which were not

---

[1] The magnetic tape which contains said conversation was presented in evidence at the administrative hearing by defendants and said conversation appears copied in the transcript of evidence of the hearing.

[2] Said conversation was in English. In the original Spanish version of this opinion those quotes were translated into Spanish.

connected with insurance could not, Carrasquillo stated: "Well, the problem consists in that we must know which are the ones concerned with the insurance business and which are not." Licari insisted in his aforesaid position and Carrasquillo stated: "There are two files there. We want to see both of them." To this Licari answered "We deny access to any of those two files." Bradley and Licari explained that those two files belonged to a firm called Richar International. Carrasquillo stated that he had to ascertain himself as to whether, actually, those files did or did not have anything to do with the insurance business object of the investigation.

There was another discussion in relation to the examiners' request to see the bank account also. Carrasquillo asked Bradley whether he received commissions and Bradley answered that only on life insurance policies and he offered to tell Carrasquillo the amounts. Carrasquillo requested to see Bradley's bank account. The latter stated that he had about six different accounts; that the only thing (of the business) which was mixed with his personal account were the commissions he received for life insurance policies. Licari added that the rest was deposited in the corporation's account. Carrasquillo insisted in seeing the bank account and stated that if he did not examine it he could not know whether said account only contained the life insurance policy commissions or whether others were included. Bradley refused to permit it.

Licari insisted that the examiners could look into the files connected with insurance, but that he would not permit them to see the records of Bradley's private affairs unless the Commissioner would specifically indicate that his inquiry on those papers was connected with the insurance business. Then Carrasquillo stated that he would be specific. He said that they had information in the sense that Bradley had business relations with an insurance agency and with an auto shop; that there were some transactions which were not

clear and that they had a letter from Fidelity General Insurance.[3]

Carrasquillo added that the Commissioner wanted to know, in the discharge of his duties, whether or not that was correct. In view of Mr. Licari's objections, Carrasquillo stated that the Commissioner had sufficient grounds to believe that Bradley was violating the law. When Carrasquillo entered into the details of said allegedly illegal relations, Bradley denied it. Licari asked why a formal complaint was not filed and Carrasquillo answered that there was no complaint, that the Commissioner just wanted to conduct the investigation. Licari reiterated that they would not permit the investigators to examine "private matters"; that they could only look into those connected with the insurance business. Carrasquillo insisted that it was necessary to look into the files which were denied to them. Licari stated that under no circumstances would he permit access thereto. Carrasquillo agreed with Licari in the sense that they could only examine the papers connected with insurance, but, he added, that they (the examiners) had to be satisfied for the benefit of the Commissioner and the law that they actually examined what was connected with insurance and that what they did not examine was not connected with insurance. He argued:

"I mean, in order to find out, whether or not they are connected with insurance. If they are connected with insurance, we shall examine those papers, if they are not, we shall have nothing to do with those documents or files. But we must find out whether they are connected with insurance or not."

To this, Licari answered that he did not agree with said position, and Carrasquillo said that, in that case, they would

---

[3] The Insurance Code forbids the insurance brokers to have economic interests or contractual relations with insurance agents. Farther on in this opinion we cite the language of the pertinent section. 26 L.P.R.A. § 918(10).

have to go and inform the Commissioner. Licari said "Bring a lawsuit" and Carrasquillo answered "sure."

As a result of the foregoing, on March 21, 1967, the Commissioner of Insurance entered an order summoning John Bradley and John Bradley, Inc., to a hearing which would be held in the assembly hall of the Commissioner's office on May 3, 1967, at 9 a.m., for the purpose of showing causes for which the penalties prescribed by the Insurance Code of Puerto Rico should not be applied to them.

In said order and at the hearing, the requirements of the due process of law were complied with, to wit: (1) notice was served on the respondents before the hearing with reasonably sufficient time to prepare themselves; (2) the notice contained the date, time, and place of the hearing; (3) in the notice reference was made to the authority of the law by virtue of which action was taken; (4) specific reference was made to the sections and articles of the law involved; and (5) a brief and simple recital of the matter involved was made.[4]

The respondents appeared at the hearing personally and by their attorney. They had the opportunity to answer the charges brought against them and to argue and present evidence in their favor. The respondents maintained the aforedescribed position as to what records, accounts, and papers they would make available to the Commissioner of Insurance and which they would not.

---

[4] In administrative law there are exceptional cases in which because of emergency situations or reasons of public order, it has been jurisprudentially upheld that it is not necessary to comply with the requirements already mentioned. *Cervecería Corona, Inc.* v. *Sec. of Public Works*, 97 P.R.R. 43 (1969); *Belmonte* v. *Mercado Reverón, Admr.*, 95 P.R.R. 250 (1967); *People* v. *Superior Court*, 86 P.R.R. 791, 796–7 (1962). For situations where public hearings have been required see *López, Mayor* v. *Superior Court*, 90 P.R.R. 299 (1964); *Román* v. *Delgado, Warden*, 82 P.R.R. 580 (1961) and *López* v. *Planning Board*, 80 P.R.R. 625, 644–5 (1958).

See also, Davis, Administrative Law, Chapter 8 (1959), and of the same author, 1 Administrative Law Treatise, Chapter 8.

The Commissioner determined that the respondents had violated §§ 2.150 and 2.160 of the Insurance Code, 26 L.P.R.A. §§ 215 and 216, and ordered the suspension of their insurance broker licenses for the term of one year. The respondents appealed to the Superior Court, San Juan Part, and the latter overruled the order of the Commissioner of Insurance and ordered the respondents, appellants therein, to place at the disposal of the Commissioner "the records and files of their insurance business" for the purposes of the examination, and also ordered that respondents' business would continue in operation during the investigation.

The central reasoning of the Superior Court which motivated its decision is found in the following two paragraphs of its opinion:

"Every person being examined shall produce and make accessible to the Commissioner or his examiners the *accounts, records, documents, files, assets, and matters in his possession or control relating to the subject of the examination,* Insurance Code § 2.160(1) or that is, the insurance business. [Italics in the original.]

"We have found nothing in those provisions from which it may be inferred that the Commissioner of Insurance or his examiners may request an insurance broker to show his personal bank account and the records belonging to other corporations not connected with the insurance business."

In other words, the Superior Court sustained defendants' position in the sense that they are the ones to judge which files, papers, and accounts the Commissioner may examine and which he may not.

The Commissioner appealed from said decision to this Court by way of certiorari and through the Office of the Solicitor General. He assigns the following three errors.

"1. The Superior Court, San Juan Part, committed error of fact and of law in deciding that John Bradley and John Bradley, Inc. have not refused and do not refuse to allow the Commis-

28

sioner of Insurance to examine everything in connection with the insurance business.

"2. The Superior Court, San Juan Part, committed error of fact and of law in deciding that the Commissioner of Insurance or his examiners cannot request an insurance broker, since they lack authority at law therefor, to show them his personal bank account where the commissions obtained by the sale of insurance are deposited.

"3. The Superior Court, San Juan Part, committed error of fact and of law in deciding that the Commissioner of Insurance or his examiners cannot request an insurance broker, since they lack authority at law therefor, to show them all the files he has in his office, including several files which said broker alleges belong to other corporations not connected with the insurance business."

The errors assigned were committed. We explain below.

At this stage the evident truth, that the insurance business is affected by public interest and that therefore the State has a genuine interest in regulating and supervising it, is no longer questioned.[5] Defendants do not do it, but, rather, they so acknowledge it.

For the solution of the case, we must resort first to positive law. In order that the Commissioner can comply with the obligations imposed on him by the Insurance Code, the lawmaker conferred upon him ample authority and that "reasonably implied" from the former. 26 L.P.R.A. § 203(1). Said section also provides in its paragraph (3) that:

"The Commissioner may conduct such examinations and investigations as he may deem proper to determine whether any person has violated any provision of this title or to secure infor-

[5] German Alliance Ins. Co. v. Lewis, 233 U.S. 389 (1914); O'Gorman & Young v. Hartford Fire Ins. Co., 282 U.S. 251 (1931); Vance, On Insurance 36, 3d ed.; 2 Couch, On Insurance 2d, § 21.1; XIX Appleman, Insurance Law and Practice, § 10321. For the history of the Insurance Code of Puerto Rico, Act No. 77 of June 19, 1957; 26 L.P.R.A. § 101 et seq.; see IX-2 House Journal of Proceedings 560, Regular Session, March 12, 1957.

mation useful in the lawful administration of any such provision."

As to the insurance brokers in particular the Code provides in its § 2.150 that, for the purpose of determining compliance with the law, the Commissioner may "examine the *accounts*, *files*, documents, affairs, and transactions relating to insurance of:" the brokers. 26 L.P.R.A. § 215. (Italics ours.)

As to access to the documents, the Code provides in its § 2.160 that:

"Every person being examined, its officers, employees, agents, and representatives shall produce and make freely accessible to the Commissioner or his examiners *the accounts*, records, documents, *files*, assets, and matters in his possession or control relating to the subject of the examination, and shall otherwise facilitate the examination." 26 L.P.R.A. § 216(1). (Italics ours.)

In its § 9.180 the Code provides that an insurance broker must not "be stockholder, member, partner, agent or employee of any insurer or agent authorized to transact or already transacting business in Puerto Rico, nor shall he have economic or financial interest or contractual relation with an insurer or agent authorized to transact or transacting business in Puerto Rico, except by reason of earned commissions or as insured." 26 L.P.R.A. § 918(10).

Lastly, the Code expressly authorizes the Commissioner to deny, suspend or revoke licenses for wilful violation of any provision of the Code or of any lawful rule or regulation or order of the Commissioner. 26 L.P.R.A. § 946.

There is no doubt that statutory law authorizes the Commissioner to conduct such investigations of which the one at bar is a good example. What is the tonic which the case law has given to the investigating power of administrative agencies? We have already discussed this matter in *Cooperativa Cafeteros de P.R.* v. *Colón*, 84 P.R.R. 267 (1961). There, at page 273 we said:

"It is a well-settled rule in the case law that administrative bodies have ample powers to request information and investigate the organizations which the law authorizes them to regulate and supervise. Originally it had been held that administrative bodies could not direct fishing expeditions into the agencies they regulated, *Fed. Trade Comm.* v. *Amer. Tobacco Co.*, 264 U.S. 298 (1924), but since the decision of *United States* v. *Morton Salt Co.*, 338 U.S. 632 (1950) the tendency has been to acknowledge ample powers to the administrative bodies to order reports and investigate the organizations which they regulate and supervise."

In *United States* v. *Morton Salt Co.*, 338 U.S. 632 (1950) the Supreme Court of the United States stated at page 652:

"Of course a governmental investigation . . . may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. *Federal Trade Comm'n* v. *American Tobacco Co., supra*. But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.' *Oklahoma Press Publishing Co.* v. *Walling*, 327 U.S. 186, 208."

■■ The decisive factor as to what documents, records, files, and accounts may be examined is whether the same are reasonably relevant to the matter object of an investigation authorized by law. *Detweiler Bros.* v. *Walling*, 157 F.2d 841, 843 (1946) *certiorari denied*, 330 U.S. 819 (1947). It may be said that the inquiry is valid if it is within the powers of the public agency conducting it, if the demand is not too indefinite and unprecise, and if the information sought is reasonably relevant to the functions or duties of said public agency. It is not necessary that it be preceded by the filing of a formal accusation or of a complaint or of a criminal charge. The purpose of the inquest is precisely to ascertain whether the law has been violated and the results thereof

may determine whether or not the public agency involved shall proceed to the filing of a charge, complaint, or accusation, as the case may be. 1 Davis, Administrative Law Treatise, Chapter 3 and especially §§ 3.02, 3.06, and 3.14, and Jaffe & Nathanson, Administrative Law, Cases and Materials, Chapter 5, 2d ed. (1961).

As it was said in *Link* v. *N.L.R.B.*, 330 F.2d 437 (1964) "it is unreasonable to the extreme to insist that the result shall be in hand before an investigation may begin."

Limiting now our approach to insurance cases in particular, the case of *Bankers Life and Casualty Co.* v. *McCarthy*, 137 N.E.2d 398 (1956) is very illustrative for the purpose of the question involved herein. In this case, McCarthy, Director of Insurance of Illinois, taking appeal under statutory authority substantially equal to ours, commenced an examination of the aforementioned insurance company and during the same the president of the company refused to allow the Director to examine an account kept separate from the regular accounts and which was marked "App." The company alleged that this was a welfare fund account which was not related to its insurance business and it based its position upon the fact that in a private litigation, in which the president of the company was a party, but not the State of Illinois nor any of its agencies, another court had decreed that said account was not of such a nature as need be included in the financial statements of the company and that it was not subject to the insurance regulations.

The Appellate Court of Illinois rejected said position and decided that said account showed some kind of transactions or dealings between the company and the insurance agents and that the Director of Insurance could examine it for the purpose of determining whether said transactions violated the letter or spirit of the regulations or of the insurance statutes. Notice that the position of the company in the sense that it was the one to determine which accounts the Director

of Insurance could examine and which he could not, was rejected.

In *Commissioner of Insurance* v. *First National Bank of Boston*, 223 N.E.2d 684 (1967) a bank was requested to appear and give testimony at a hearing in relation to its financial dealings—a loan to the insurance company under investigation. The bank objected. The court sustained the Commissioner. It stated that the Commissioner's duties to administer the insurance statutes entails the duty to exercise a broad surveillance of the affairs of the insurance companies and that he was authorized to investigate the relations of said companies and the banks. The court stated: "If any 'understanding' did exist between the Bank and Benson [the President of the Insurance Company] it would be a part of the total circumstances which the Commissioner might properly investigate." The court ordered the Bank to appear and answer.

■ *Bankers Life, supra*, shows that the investigating power of the Commissioner is not restrictively interpreted to limit it only to the insurance affairs, properly speaking, since the welfare fund account of the company was produced for investigation; and *Commissioner* v. *First National Bank of Boston, supra*, shows that said investigating power is not limited solely to companies engaged in insurance, but rather that, when the circumstances so justify, they may be extended to other agencies or enterprises which have had financial or economic relations with insurance companies—in that case, the Bank of Boston.

In cases of investigations conducted by public agencies, the fact that certain documents belong to a third party does not exclude them from the scope of the investigation validly conducted within the statutory authority vested in the investigating administrative agency. See for example, *Application of Waterfront Commission of New York Harbor*, 160 A.2d 832 (1960); *Pope & Talbott, Inc.* v. *Smith*, 340 P.2d

960 (1959). From the foregoing it is evident that if a third party cannot refuse to produce facts which are within the ambit of the investigating power of the public agency (because they are related to the question or matter over which the agency has jurisdiction) even less a person or agency can refuse—in this case an insurance broker—who is evidently under the jurisdiction of the investigating agency—the Office of the Commissioner of Insurance.

In *N.L.R.B.* v. *United Aircraft Corp.*, 200 F.Supp. 48 (1961) a case in which the person investigated maintained, like defendants in the case at bar do, that it has repeatedly offered to make available to the investigators the records connected with the matter in controversy, the court stated:

"A person or corporation being investigated cannot be placed in a position of giving only such information as he or it may choose to offer. Usually it is the information which is not offered, that forms the basis for scrutiny when illegal practices are in question."

■ The Commissioner of Insurance may examine the files, papers, and accounts which he deems proper and, of course, he shall only use those which are relevant to the duties and powers imposed and vested on him by the Insurance Code of Puerto Rico.

In view of the foregoing, the judgment of February 14, 1968 rendered in this case by the Superior Court, San Juan Part, will be reversed, and the order of the Commissioner of Insurance object of this appeal, will be affirmed.

Mr. Justice Hernández Matos did not participate herein.