Opinión concurrente emitida por la
Jueza Asociada Señora Fiol Matta.
El recurso ante nuestra consideración presenta una controversia que no ha sido atendida expresamente en nuestro ordenamiento, a saber, si en el caso de un subpoena duces tecum administrativo, dirigido a un tercero para que divulgue información suya a pesar de no ser el objeto de la investigación, se requiere explicitar la pertinencia de la información requerida. Por eso, si bien me parece atinada la disposición que de este caso ha hecho la Mayoría, entiendo que debimos examinar a fondo los criterios aplicables a las investigaciones administrativas frente a reclamos de terceros basados en las garantías constitucionales contra citaciones, allanamientos y registros irrazonables, con miras a elaborar las guías que requiere dicha actuación gubernamental.
I
En Puerto Rico, el desarrollo doctrinario y jurisprudencial en materia de derecho administrativo tiene como origen la doctrina y la jurisprudencia estadounidense. A través de los años, éstas se han seguido usando como referente por las posibles correspondencias que un origen *919 común pueda brindar, siempre que sean compatibles con nuestro acervo legal. Por eso resulta útil comparar el desarrollo jurídico de la doctrina sobre investigaciones administrativas y el uso de subpoenas duces tecum en ambas jurisdicciones.
El tratadista norteamericano Bernard Schwartz nos ex-plica la importancia de la información para el funcionamiento de las agencias administrativas con estas palabras:
Information is the fuel without which the administrative engine could not operate; the old saw that knowledge is power has the widest application in administrative law. To exercise its substantive powers of rule making and adjudication intelligently, the agency must know what is going on in the area committed to its authority. B. Schwartz, Administrative Law, 3ra ed., Boston-Toronto, Ed. Litle, Brown and Co., 1991, pág. 110.
Aunque es común que las agencias obtengan información de manera voluntaria, con frecuencia se les delega mediante legislación el poder de obligar a las personas a que les suministren la información que necesiten. H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 968-969 (1993). El poder de investigación es para Schwartz el modo mediante el cual una agencia puede asegurar la consecución de la información necesaria para el uso racional de sus poderes sustantivos. Schwartz, op. cit., pág. 178.
El poder de requerir información de manera coercitiva incluye el poder de citar testigos y el de requerir la producción de documentos. A ese poder se le denomina también como el poder de subpoena ad testificandum cuando se requiere meramente testimonio, o subpoena duces tecum cuando se requiere que se comparezca ante la agencia para producir documentos. H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra.
Las citaciones administrativas que se utilizan para obtener información en el curso de una investigación son instrumentos vitales para que las agencias puedan cumplir las funciones que se les encomiendan. H.M.C.A. (P.R.), Inc., *920 etc. v. Contralor, supra. Schwartz recalca que sin el poder para emitir subpoenas, el poder de investigación administrativo queda subordinado al consentimiento del investigado. Sobre la naturaleza e importancia de ese instrumento investigativo el autor expresa lo siguiente:
The subpoena power differs materially ... from the power to gather data and make investigations. Without the subpoena that power is in effect a power of inspection at the employer’s place of business to be exercised only on his consent ... [T]he subpoena is in form an official command, and even though improvidently issued it has some coercive tendency. Schwartz, op. cit., 4ta ed., 1994, pág. 199.
A mediados del siglo pasado, en tiempos de guerra, las agencias administrativas jugaron un papel central en la estabilización económica y social de Estados Unidos, regulando la producción industrial, los salarios y los precios. Ello, según explica Davis, requirió cambios constitucionales profundos que el Tribunal Supremo estadounidense, con un criterio contrario a años anteriores, no titubeó en realizar.(1) El caso Endicott Johnson Corp. v. Perkins, 317 U.S. 501 (1943), marcó una nueva época para las agencias del ejecutivo. En dicho caso, la agencia gubernamental emitió un subpoena contra una compañía alegando tener “razones para creer” que ésta había incurrido en violaciones a la ley custodiada por la agencia. La compañía alegó que la información solicitada no era pertinente a las determinaciones que la Secretaria de la agencia estaba facultada a hacer según el estatuto orgánico. El Tribunal Supremo resolvió que era a la Secretaria a quien le competía determinar la pertinencia de la información requerida. Su discreción era amplia en la medida en que la evidencia no fuera evidentemente impertinente (plainly incompetent or *921 irrelevant) para lo que le estaba encomendado legalmente. Incluso, el Tribunal Supremo expresó que el tribunal apelado no tenía autoridad para dilucidar el asunto concerniente a la envergadura de la investigación.(2)
La opinión del Tribunal Supremo estadounidense en Okla. Press Pub. Co. v. Walling, 327 U.S. 186 (1946), dejó claro que la norma expuesta en Endicott Johnson Corp. v. Perkins, supra, era de aplicación general y constituía la nueva doctrina sobre el alcance del poder investigativo de las agencias federales. Además, dicha opinión manifestó que un subpoena no constituye un registro o un allanamiento, limitándose por lo tanto la protección constitucional ofrecida por la Enmienda Cuarta a que el requerimiento no sea demasiado indefinido o amplio, que la agencia esté autorizada por ley a requerir información y que la información requerida sea pertinente. En fin, el requerimiento no puede ser irrazonable. Okla. Press Pub. Co. v. Walling, supra, pág. 195.
Los precedentes doctrinarios anteriores a Endicott Johnson Corp. v. Perkins, supra, y a Okla. Press Pub. Co. v. Walling, supra, diametralmente contrarios a esta nueva doctrina, estaban tan firmemente establecidos que las cortes inferiores se rehusaron por un tiempo a descartarlos. Davis relata que para ello se requirió el ejercicio pleno de la autoridad del Tribunal Supremo. El caso United States v. Morton Salt Co., 338 U.S. 632, 641-642, 652 (1950), puso fin al repudio que había manifestado el Tribunal Supremo de Estados Unidos en décadas anteriores sobre las llamadas “expediciones de pesca”, permitiéndolas, incluso, para satisfacer una “curiosidad” de la agencia.
La amplitud conferida jurisprudencialmente a la facultad investigativa de las agencias eliminó cualquier requisito de causa probable y dejó a discreción del jefe de las *922 agencias el aspecto de la pertinencia de la información. La discreción de la agencia quedó circunscrita sólo por los criterios establecidos en Okla. Press Pub. Co. v. Walling, supra, es decir, que la información sea pertinente a la investigación y el alcance del requerimiento sea lo razonablemente necesario.(3) La determinación de pertinencia se basa en la relación de lo requerido al propósito de la investigación, el cual, a su vez, descansa en la sana discreción del investigador.
Según Davis, el cambio en la connotación de los conceptos “registro irrazonable” y “autoincriminación” en el contexto de las investigaciones administrativas ocurrió sin ex-plicación alguna. Por eso el tratadista alega que los cambios doctrinales se basaron en cambios de política pública para los cuales el Tribunal Supremo no acostumbra brindar explicación:
[T]the Supreme Court in its opinions on the administrative power of investigation customarily avoids any discussion of broad reasons of policy. K.C. Davis, Administrative Law Treatise, 2da ed., San Diego, K.C. Davis Pub. Co., 1978, Vol. I, pág. 236.
En Okl. Press Pub. Co. v. Walling, supra, se estableció que un requerimiento para la producción de documentos, a pesar de ser un registro implícito,(4) no es propiamente un registro o un allanamiento bajo el significado clásico de la Cuarta Enmienda de la Constitución de Estados Unidos. Pero en See v. City of Seattle, 387 U.S. 541, (1967), el Tribunal Supremo de Estados Unidos determinó que las protecciones de la Cuarta Enmienda se extienden a los *923 subpoenas. En U.S. v. Miller, 425 U.S. 435 (1976), se aclaró que una orden o subpoena para la producción de libros y papeles puede constituir un registro o allanamiento irrazonable dentro de la Cuarta Enmienda si el alcance de dicha producción es demasiado amplio.
En Puerto Rico, el desarrollo doctrinario sobre las investigaciones administrativas a través de requerimientos de información o subpoenas duces tecum, comenzó a forjarse a la luz de lo resuelto por los tribunales estadounidenses. En Cooperativa Cafeteros P.R. v. Colón Torres, 84 D.P.R. 278 (1961), adoptamos la norma formulada jurisprudencialmente por el Tribunal Supremo de Estados Unidos para otorgarle amplios poderes de investigación a las agencias. En ese caso, el Inspector de Cooperativas solicitó de Cafeteros de Puerto Rico una extensa información relacionada con las operaciones de esa cooperativa. La información solicitada debía estar incluida en un informe requerido por la Ley de Cooperativas de Puerto Rico que el demandado había dejado de completar. Así lee la traducción que hiciéramos en ese caso de la norma tomada de United States v. Morton Salt Co., supra, pág. 285:
Aún si consideramos la información solicitada en este caso como motivada meramente por la curiosidad oficial ... los organismos llamados a hacer cumplir las leyes tienen el legítimo derecho de cerciorarse de que las corporaciones actúan de acuerdo con la ley y con el interés público.
Desde luego una investigación gubernamental de los asuntos de una corporación puede ser de una naturaleza tan abarcadora y tan no relacionada con la materia bajo investigación que exceda el poder de investigación!.] Federal Trade Comm’n v. American Tobacco, supra. Pero es suficiente si la investigación está dentro de la autoridad de la agencia, el requerimiento no es demasiado indefinido y la información solicitada es razonablemente [pertinente]. “La esencia de la protección consiste en el requisito, expresado en forma concreta, de que la divulgación requerida no sea irrazonable”. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208. (Énfasis suplido.) Cooperativa Cafeteros P.R. v. Colón Torres, supra, pág. 285.
*924 Luego de exponer el citado fragmento, aclaramos que
[d]esde luego, existen límites en cuanto a lo que, bajo el color de informes, puede exigir la Comisión. No intentamos definir en lo abstracto exactamente cuáles son estos límites. Pero podemos decir con certeza que tales límites impedirían que la Comisión llegara a los extremos del ejemplo extravagante que utilizó uno de los demandados para demostrar lo que teme que ocurra si sostenemos la validez de esta orden— que la Comisión puede requerir informes de las compañías de automóviles que incluyan archivar los automóviles. Id.
Quedaron asentados los criterios a ser considerados en nuestra jurisdicción al evaluar una controversia acerca del poder de investigación de las agencias, a saber: que la información solicitada esté dentro de la autoridad de la agencia, el requerimiento no sea demasiado indefinido y la información sea razonablemente pertinente.(5) Un requerimiento de información impugnado será respaldado si cumple “con lo que se ha sostenido es razonable requerir de un organismo sujeto a investigación y reglamentación de una agencia administrativa”. Cooperativa Cafeteros P.R. v. Colón Torres, supra, pág. 286.
En Comisionado de Seguros v. Bradley, 98 D.P.R. 21 (1969), señalamos que lo determinante en cuanto a qué documentos, expedientes, archivos y cuentas pueden ser examinados por una agencia es su pertinencia al asunto que es objeto de una investigación autorizada por la ley.(6) Indicamos que no es necesaria la presentación de una querella formal, de una demanda o de una acusación criminal, ya que el propósito de la investigación es precisamente averiguar si se ha violado la ley. Del resultado de la investigación puede depender si el organismo público concernido *925 procede o no a la formulación de una querella, demanda o acusación.(7)
En esa opinión añadimos que la determinación sobre la pertinencia de la información requerida corresponde inicialmente al funcionario que realiza la investigación, por lo que concluimos que una persona o una corporación que está bajo investigación no puede colocarse en la posición de dar solamente la información que ella elija ofrecer.(8) Por otro lado, hemos precisado que son los tribunales, como intérpretes últimos de la compatibilidad del ejercicio del poder investigativo gubernamental con los postulados constitucionales, los llamados a dirimir las controversias sobre asuntos de pertinencia. De esa forma, por los poderes que la Constitución nos ha conferido, hemos preservado la facultad suprema para dirimir controversias sobre este asunto, como salvaguarda contra el amplio poder investigativo que hemos reconocido. Así, aunque una agencia administrativa puede expedir una citación sin obtener antes una orden judicial, el requerido tiene derecho a cuestionar su razonabilidad en un tribunal antes de ser penalizado por su incumplimiento.(9) H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, págs. 970-971.
El poder inquisitivo de las agencias administrativas, sin duda, puede convertirse en un instrumento de hostigamiento y persecución. Ver Schwartz, op. cit., pág. 110. Por eso aun cuando las agencias gocen de tan amplia facultad investigativa, su ejercicio no queda al margen de los postulados constitucionales que informan nuestro ordenamiento. H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 970.
*926 Reiteradamente hemos reconocido que las interpretaciones que hace el Tribunal Supremo federal sobre el contenido de los derechos fundamentales conferidos por la Constitución de Estados Unidos sólo constituyen el mínimo de protección que debemos brindar a esos derechos al amparo de nuestra propia Constitución. Por eso, dichas interpretaciones no limitan nuestra facultad para reconocer mayor amplitud a las garantías constitucionales conferidas por la Constitución de Puerto Rico. Así, hemos determinado que nuestra Constitución tiene una factura más ancha que la Constitución federal con respecto a derechos tales como la prohibición contra registros y allanamientos irrazonables. Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924, 948-949 (2000); H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra.(10) La razón para ello es que la Constitución del Estado Libre Asociado “ ‘tiene un origen y un historial distinto a la Constitución de Estados Unidos. ... Nuestra Constitución reconoce y concede unos derechos fundamentales con una visión más abarcadora y protectora que la Constitución de Estados Unidos’ ”. Emp. Pur. Des., Inc. v. H.I.E.Tel., supra, pág. 949. Véase López Vives v. Policía de P.R., 118 D.P.R. 219, 226-227 (1987).
En ocasiones hemos puesto de manifiesto que la jurisprudencia estadounidense, en cuanto a los derechos fundamentales, sólo tiene valor persuasivo, ilustrativo y comparativo, ya que nuestra percepción de los valores involucrados y el modo de conciliarios pueden ser enteramente distintos. Ojeda v. El Vocero de P.R., 137 D.P.R. 315 (1994). Así lo hemos dispuesto al expresarnos sobre las garantías contra registros y allanamientos irrazonables. Pueblo v. Pérez Pérez, 115 D.P.R. 827 (1984).
En H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, reiteramos el principio de que las investigaciones administrati *927 vas están sujetas, por norma general, a la garantía pro-vista por la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico contra citaciones, allanamientos, registros e incautaciones irrazonables. E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 206 (1984). Es incuestionable el hecho de que una investigación administrativa constituye una intervención del Estado en los asuntos de las personas naturales o jurídicas que implica el acceso a sus casas, papeles o efectos. La jurisprudencia ha establecido distinciones entre los diversos métodos investigativos para efectos de determinar la razonabilidad de la intervención estatal {e.g., inspección, allanamiento, entrega de documentos, etcétera). RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 433 (1996). Dicha intervención está limitada por los criterios de razonabilidad que garantiza nuestro texto constitucional y que a esos efectos hemos foijado. Las garantías desarrolladas a partir de esa limitación fundamental al poder gubernamental sustentan la norma claramente establecida que sujeta la razonabilidad de un requerimiento administrativo o subpoena duces tecum a que concurran las tres circunstancias identificadas en la jurisprudencia antes explicada: que la investigación esté dentro de la autoridad conferida por ley a la agencia; que el requerimiento no sea demasiado indefinido, y que la información solicitada sea razonablemente pertinente al asunto específico bajo investigación. H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 970; E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394, 402 (1984); P.N.P. v. Tribunal Electoral, 104 D.P.R. 741, 747—748 (1976); Comisionado de Seguros v. Bradley, supra, pág. 31.
Ha quedado establecido que la determinación de causa probable no aplica al caso de requerimientos de documentos o subpoenas-, aplica, sin embargo, en circunstancias donde se pretenda inspeccionar, incautar o allanar, ya que es necesaria la emisión de una orden judicial a tales efectos. Ya nos expresamos sobre ese particular en RDT Const. Corp. v. Contralor I, supra, págs. 433-434, y en E.L.A. v. Coca Cola Bott. Co., supra. En el caso de los *928 subpoenas duces tecum, como ya hemos mencionado, lo determinante es que la agencia u organismo inquisidor demuestre la pertinencia de la información solicitada. Dicho estándar es menor que el de causa probable.
En varias ocasiones hemos insistido en que al interpretar nuestra Constitución debemos garantizar la continuada vigencia de sus valores fundamentales frente a las nuevas realidades del país. Debemos evitar que interpretaciones inflexibles y el apego a viejos modelos impidan su aplicabilidad a las eventualidades del futuro y en pocos años tornen obsoleta una constitución diseñada para guiar la vida de un pueblo por varios siglos. Al interpretar sus contornos, debemos garantizar su vigorosidad y relevancia ante los problemas socioeconómicos y políticos de nuestro tiempo. Emp. Pur. Des., Inc. v. H.I.E.Tel., supra; Nogueras v. Hernández Colón, 127 D.P.R. 405, 411 (1990); Pacheco v. Vargas, Alcaide, 120 D.P.R. 404, 410 (1988); P.I.P v. C.E.E., 120 D.P.R. 580, 613 (1988); López Vives v. Policía de P.R., supra, pág. 227. Es una realidad de la vida contemporánea que la mayor parte de los subpoenas emitidos para obtener documentación se dirigen a terceras partes que no son el objeto de la investigación administrativa.(11) Por esta razón, en RDT Const. Corp. v. Contralor I, supra, rechazamos la aplicación de la doctrina estadounidense sobre privacidad donde el criterio aplicable era el de “posesión o propiedad”, según United States v. Miller, supra, y su progenie, y nos inclinamos por la vertiente anterior expuesta en Katz v. United States, 389 U.S. 347 (1967), que estableció el criterio de “expectativa razonable de intimidad”. La necesidad de este enfoque se hace cada vez más patente con el creciente uso cotidiano que de la tecnología informática hace la ciudadanía.
En RDT Const. Corp. v. Contralor I, supra, hicimos hincapié en la amplitud de los poderes investigativos del Con *929 tralor, habida cuenta de que se trata de una agencia que tiene rango constitucional con rasgos y poderes muy particulares que la distinguen de otras agencias administrativas.(12) H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 964; RDT Const. Corp. v. Contralor I, supra, pág. 445. No obstante, y a pesar de la amplitud de dichos poderes, le conferimos una protección al investigado cuando su información se encuentre en poder de un tercero. Posteriormente, en RDT Const. Corp. v. Contralor II, 141 D.P.R. 861, 863-864 (1996), aclaramos el mecanismo que establecimos en RDT Const. Corp. v. Contralor I, supra, para asegurar que los tribunales tengan una oportunidad de evaluar la razonabilidad de un subpoena dirigido a un tercero y determinar su procedencia, si quien está siendo investigado decide impugnarlo. Dicho mecanismo consiste en notificar a la persona en quien se ha centrado la investigación cuando se le requiriera a un tercero la producción de documentos sobre los cuales el investigado alberga una expectativa de intimidad. En el caso de referencia se requirió la producción de documentos bancarios de una entidad corporativa.
Al definir los poderes investigativos de la Asamblea Legislativa, este Foro ha adoptado una postura similar a la que asumimos en cuanto al Contralor.(13) Por eso, en Rullán v. Fas Alzamora, 166 D.P.R. 742 (2006), recalcamos que la facultad investigativa de la Legislatura es tan amplia como sea necesaria para cumplir la función legislativa, pero aclaramos, como antes lo hemos hecho, que no obstante su amplitud, dicha facultad no es absoluta y corresponde a este Foro demarcar sus contornos.(14) Aplicamos *930 entonces el requisito de notificación a la gestión investigativa de la Asamblea Legislativa y, como discutiremos más adelante, ampliamos la protección que dicha notificación brinda al investigado.
Así, ante la presencia de un tercero en la gestión investigativa de unos organismos ampliamente facultados por la Constitución, hemos erigido protecciones adicionales a las desarrolladas en la doctrina tradicional sobre requerimientos de información. De ello se desprende que en el caso de agencias con poderes investigativos otorgados estatutariamente podemos exigir salvaguardas más rigurosas para ceñir la acción administrativa a los imperativos constitucionales que ya hemos expuesto.
Los hechos que provocaron nuestras opiniones en H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, y en RDT Const. Corp. v. Contralor I, supra, son distinguibles de los del caso de autos, pues implicaban subpoenas requiriendo a un tercero la divulgación de información perteneciente a quienes eran el objeto de la investigación. En la controversia que hoy nos ocupa, la Oficina de Asuntos Monopolísticos (OAM) solicita la entrega de documentos pertenecientes a los recurrentes, quienes son terceros en la investigación sobre la Puerto Rican Cement Company, Inc. (PRC). Como se desprende de la marcada tendencia jurisprudencial, cuando la información requerida le pertenece a un tercero, la protección judicial ante la intervención gubernamental se torna imperante.
En nuestra jurisdicción las agencias con poderes inquisitivos pueden requerir información perteneciente a terceros en quienes no se ha centralizado la investigación administrativa. En Comisionado de Seguros v. Bradley, supra, pág. 33, habíamos indicado que el poder investigativo del Comisionado de Seguros no se interpreta restrictivamente para limitarlo a operaciones de seguros propiamente dichas ni se limita a compañías dedicadas a seguros, sino que, cuando las circunstancias lo justifican, puede extenderse a otras entidades o empresas que hayan tenido *931 relaciones comerciales o económicas con compañías de seguros.(15)
A tales efectos declaramos que, tratándose de una investigación válidamente hecha por un organismo público dentro del ámbito de la autoridad conferida por ley, el hecho de que determinados papeles pertenezcan a un tercero no los pone fuera del alcance de la investigation.(16) Según este razonamiento, establecimos que si un tercero no puede oponerse a revelar datos que estén dentro del ámbito del poder investigativo del organismo público (por estar relacionados con el asunto o la materia sobre la cual el organismo tiene jurisdicción), menos puede oponerse a ello una persona o una entidad que está claramente bajo la jurisdicción del organismo investigador. A pesar de conferir tal amplitud investigativa a las agencias administrativas, no tuvimos la oportunidad de demarcar los lindes constitucionales de la facultad para requerir información a terceros que no son propiamente el objeto de la investigación de la agencia.
En Rullán v. Fas Alzamora, supra, se le “notificó” al investigado acerca de un subpoena expedido al Secretario de Hacienda requiriendo sus documentos contributivos. Resolvimos que dicha notificación no cumplía con los requisitos constitucionales de razonabilidad. Establecimos que era necesario explicitar en la notificación, de manera específica y detallada, las razones por las cuales una comisión creada para investigar a la WIPR necesitaba las planillas contributivas de su ex asesor legal. Respecto a esto, nos hicimos la pregunta siguiente:
¿No era razonable que el referido requerimiento señalara al contribuyente en forma específica y detallada las razones por las cuales la comisión legislativa, diseñada y creada con el propósito de investigar la situación existente en la Corporación de Puerto Rico para la Difusión Pública (W.I.P.R.), necesitaba *932 copias de sus planillas para lograr ese fin? Entendemos que no sólo era razonable, sino imprescindible, por imperativo del derecho constitucional a un debido proceso de ley.
... [E]l Tribunal de Primera Instancia debió exigir al Senado de Puerto Rico que demostrara la razonabilidad y pertinencia del requerimiento dirigido al Secretario de Hacienda por una de sus comisiones. (Énfasis suplido y en el original.) Rullán v. Fas Alzamora, supra, pág. 780.
A lo anterior debemos añadir que existe una distinción entre una orden de producción de documentos o subpoena emitido con fines puramente civiles y un subpoena con fines penales. Hemos establecido que cuando se trate de un subpoena tendente a conseguir la información para una acusación criminal, se debe cumplir estrictamente con todas las salvaguardas establecidas según las normas constitucionales. RDT Const. Corp. v. Contralor I, supra, pág. 445. En el caso de un subpoena mediante el cual se pretenda conseguir información para hacer acusaciones criminales, es imperativo que el cumplimiento de los requisitos constitucionales del subpoena surja claramente de su texto.
Cabe recordar que la protección consagrada en la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, se extiende también a las corporaciones privadas, aunque el ámbito de la intimidad reconocido a éstas es menor que el de las personas naturales. RDT Const. Corp. v. Contralor I, supra, pág. 435; E.L.A. v. Coca Cola Bott. Co., supra, pág. 209.(17) Por ello, entiendo que cuando el subpoena está dirigido a descubrir información perteneciente a terceros que son personas naturales, es imperativo considerar los asuntos sobre privacidad y autoincriminación que dicho requeri *933 miento pueda suscitar. Bajo esas circunstancias, nuestra facultad revisora adquiere mayor rigurosidad, por lo que si el tercero es una persona natural, la agencia debe hacer alegaciones específicas que impliquen al tercero con el objeto de la investigación administrativa. Dicho subpoena debe estar sujeto a un escrutinio más exigente que aquel que se dirija a una persona jurídica.
De acuerdo con lo antes expuesto, aprovecharía la coyuntura que nos brinda este caso para establecer que cuando una entidad gubernamental con poderes inquisitivos emita un subpoena duces tecum con fines penales a un tercero en quien no se ha centrado la investigación, el requerimiento deberá exponer en forma específica y detallada, la pertinencia y la necesidad de los documentos requeridos. Es decir, cuando la información requerida en un subpoena con fines penales pertenezca a un tercero que no es el objeto de la investigación, no es suficiente que el requerimiento se justifique con las mismas razones que servirían para justificar un subpoena con fines penales dirigido al objeto de investigación. En la evaluación de un subpoena dirigido a un tercero se debe aplicar un estándar más riguroso que el de mera pertinencia. El tercero tiene derecho a conocer las razones por las cuales se le está requiriendo una información que le pertenece en el contexto de una investigación que no está centrada en su figura, o que al menos no aparenta estarlo. En esas circunstancias, la agencia debe explicar las razones para requerirle la información objeto del subpoena dentro del marco de la investigación.
II
A tono con la política de industrialización que comenzó en Puerto Rico a finales de la década de los cuarenta para estimular la inversión privada, y ante la consecuente ex-pansión industrial y económica que se manifestó a princi *934 píos de la década de los sesenta,(18) se aprobó la Ley Núm. 77 de 25 de junio de 1964, conocida como una ley para prohibir las prácticas monopolísticas y proteger la justa y libre competencia en los negocios y el comercio (Ley de Monopolios y Restricción del Comercio), 10 L.P.R.A. secs. 257-274. Esta ley tiene como norte la concepción de un sistema democrático que asegure la libre participación del ciudadano en las decisiones colectivas.(19) Según su Exposición de Motivos, es incompatible con tal
... aspiración democrática la concentración del poder económico en unas pocas personas y entidades, en forma tal que éstas se coloquen en posición de dominar áreas o sectores de la economía puertorriqueña mediante manipulaciones que desdeñen el bienestar del pueblo en aras del lucro desmesurado de esas personas y entidades. Tiene que asegurarse el pueblo de que no han de germinar en Puerto Rico esas concentraciones de poder económico, para no correr el riesgo de que toda la vida económica del país pueda quedar a merced de un grupo reducido de personas que actúen movidas por un interés privado. Ante una situación de tal naturaleza, es difícil concebir que las decisiones colectivas vayan a tomarse verdadera *935 mente a base de la libre participación de todos los ciudadanos. Exposición de Motivos de la Ley Núm. 77, supra, 1964 Leyes de Puerto Rico 248.
En torno a los valores que establece este enunciado, la Ley Núm. 77, supra, protege al pueblo asegurándole los beneficios de la libre competencia. Por tal razón, en la aplicación de la ley, como prescribe el legislador, “deberá tenerse en cuenta que su objetivo final es proscribir males que amenazan la economía general de la Isla ...”. Exposición de Motivos de la Ley Núm. 77, supra, pág. 248.
El Informe conjunto sobre el Sustitutivo P. de la C. 909 sometido por las Comisiones de lo Jurídico, de Hacienda y de Comercio e Industria de la Cámara de Representantes,(20) recomendando la aprobación del proyecto que se convirtió en la Ley Núm. 77, supra, declara que se debe
[p]roveer una base flexible para la propia ejecución de la ley, basada en una norma de razonabilidad que permita a nuestros tribunales tomar en cuenta las características propias y las necesidades de nuestra economía, así como los planes gubernamentales y la acción privada para fomentarla; es decir, queda abierta la función creadora en la aplicación de la ley, tanto en la rama ejecutiva como en la judicial en sentido favorable a nuestro desarrollo económico, aún en el caso de disposiciones con precedentes en la legislación de los Estados Unidos.
En P.R. Fuels, Inc. v. Empire Gas Co., Inc., 149 D.P.R. 691, 706-708 (1999), explicamos que si bien nuestra legislación antimonopolística se adoptó según la Ley Sherman (21) y de la Ley Clayton,(22) no estamos obligados a seguir ciegamente la interpretación de estas leyes elaboradas por los tribunales federales. La doctrina que hemos reiterado en nuestras decisiones respecto a la interpretación de leyes copiadas o adoptadas de otras foráneas es, como sabemos, que se puede acudir a las jurisdicciones de origen cuando ello es necesario para la interpretación adecuada de las *936 normas así adoptadas. Este Tribunal siempre puede escoger otra norma, extranjera o de confección propia, que considere más equitativa, incluso puede expandir los derechos garantizados en la jurisdicción de origen. Por sus adecuadas palabras, nos remitimos respecto a esta doctrina de interpretación a nuestra decisión en Berrocal v. Tribunal de Distrito, 76 D.P.R. 38, 44 (1954), donde nos pronunciamos de la siguiente manera:
Aparte de nuestra libertad de acción ante precedentes que no son productos de nuestra propia jurisprudencia, una decisión judicial no es exclusivamente un cotejo más o menos científico de los antecedentes judiciales. Una decisión judicial es además la creación de una norma jurídica que se ajuste al estilo de vida de un pueblo, entendiendo por estilo de vida el sistema de superaciones individuales que van integrando paulatinamente el ethos colectivo de un pueblo.
En la jurisprudencia que interpreta la Ley Núm. 77, supra, hemos sido enfáticos al expresar que fue la intención de la Asamblea Legislativa que esta ley se interpretara conforme a nuestra particular realidad económica y social. Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497, 508 (1994). Es por ello que, aunque es útil recurrir a la jurisprudencia federal que interpreta las leyes orgánicas de agencias federales análogas a las nuestras, no podemos aplicarlas ciegamente; más bien tenemos que considerar la naturaleza de la controversia y los derechos comprometidos, pues es indispensable aclimatar a nuestro ambiente jurídico los precedentes que otras jurisdicciones han formulado.
Como apuntáramos anteriormente, en nuestra jurisdicción rige en materia constitucional una visión más abarcadora y protectora que en la jurisdicción federal. A través de dicha “perspectiva de rigor”, analizaremos la razonabilidad de los subpoenas impugnados, atendiendo los aspectos que conforman la constitucionalidad del subpoena.
La Legislatura le proporcionó a la OAM la facultad de expedir citaciones o requerir información o documentos pertinentes a las investigaciones que conduzca. El Art. *937 16(a)(1) de la Ley Núm. 77, supra, 10 L.P.R.A. sec. 272, prescribe que
[b]ajo la dirección del Secretario Auxiliar, la Oficina de Asuntos Monopolísticos queda facultada para:
(1) Compilar y ordenar información sobre las prácticas competitivas en el mercado de Puerto Rico y sobre la relación de éste con los mercados de Estados Unidos y del extranjero, con el fin de determinar cuáles prácticas conllevan restricciones al libre comercio y propenden a la indebida concentración del poder económico, y requerir de cualquier persona, según se define dicho término en este capítulo, aquellos informes que se consideren necesarios a tales fines, debiéndose prescribir por reglamento los períodos que cubrirán dichos informes, así como la forma y el contenido de los mismos. Dichos informes podrán requerir, no sólo información interna con relación a la persona afectada, sino también información pertinente a las relaciones comerciales de ésta con otras personas.(23)
El Reglamento Núm. 974 de 27 de abril de 1965, conocido como Reglamento Núm. 2 para la Ejecución de la Ley Número 77 de 25 de junio de 1964, se promulgó precisamente para
... facilitar la compilación y ordenación de información sobre las prácticas competitivas en el mercado de Puerto Rico y sobre la relación de éste con los mercados de Estados Unidos y del extranjero, con el fin de determinar cuáles prácticas restringen o pueden restringir el libre comercio y propenden a la indebida concentración del poder económico. Artículo 2 del Reglamento Núm. 2, supra, pág. 1.
El Artículo 4 del Reglamento Núm. 974, supra, págs. 1-2, dispone que
[t]oda persona deberá rendir los informes que la Oficina de Asuntos Monopolísticos del Departamento de Justicia consi *938 dere necesarios para los fines descritos en el Artículo 2 precedente.
Por su parte, la Sección 5 del Reglamento Núm. 974, supra, establece que
[l]a Oficina de Asuntos Monopolísticos del Departamento de Justicia podrá requerir no sólo la información interna con relación a la persona afectada(24) sino también información pertinente a las relaciones comerciales de ésta con otras personas.
La Oficina de Asuntos Monopolísticos podrá interrogar acerca de la estructura de la empresa o negocio bajo estudio', naturaleza del producto; estructura y rendimiento del mercado; conducta de la empresa y sobre cualquier otro indicador necesario para determinar cuáles prácticas restringen o pueden restringir el libre comercio y propenden a la indebida concentración del poder económico. (Enfasis suplido.) 7 RPR see. 120.583.
El Reglamento Núm. 975 de 25 de junio de 1965, también conocido como Reglamento Núm. 3 para la Ejecución de la Ley Número 77 de 25 de junio de 1964, presenta dos tipos de citación y requerimiento de documentos: la citación penal y la citación civil. El tipo de citación depende de las violaciones a la ley que se pretenden investigar y la naturaleza del castigo que proceda.
A la PRC se le investiga por alegadamente haber incurrido en actos para restringir el comercio, que según el Artículo 2 de la Ley Núm. 77 implica “[t]odo contrato, combinación en forma de trust o en otra forma, o conspiración para restringir irrazonablemente los negocios o el comercio en el Estado Libre Asociado de Puerto Rico o en cualquier sector de éste ...”. 10 L.P.R.A. see. 258. Según la misma disposición, “toda persona que haga tales contratos o se comprometa en tales combinaciones o conspiraciones incurrirá en delito menos grave”. íd.
Las querellas presentadas contra PRC también imputan infracción al Artículo 4 sobre monopolios. Según éste:
*939 Toda persona que monopolice o intente monopolizar o que se combine o conspire con cualquier otra persona o cualesquiera otras personas con el objeto de monopolizar cualquier parte de los negocios o el comercio en el Estado Libre Asociado de Puerto Rico, o en cualquier sector de éste, será considerada culpable de un delito menos grave. 10 L.P.R.A. see. 260.
El Artículo 10 de la Ley Núm. 77 regula las penalidades impuestas por las violaciones a sus disposiciones y prescribe que
[c]ualquier persona que viole las sees. 258, 260, 263(f) o 264 de este título será culpable de delito menos grave y convicta que fuere será castigada con una multa que no será menor de cinco mil (5,000) dólares ni mayor de cincuenta mil (50,000) dólares, o con prisión que no excederá de un (1) año o con ambas penas a discreción del tribunal. 10 L.P.R.A. see. 266.
Evidentemente el caso de autos trata sobre una citación criminal, pues las actividades imputadas a la PRC son castigadas criminalmente por la Ley Núm. 77, supra. Con respecto a este tipo de citación, en el Artículo 5 del Reglamento Núm. 975, supra, pág. 2, se establece lo siguiente:
Citación Penal —
Los abogados adscritos a la Oficina de Asuntos Monopolísticos podrán citar como testigo a cualquier persona. Toda persona citada por los susodichos abogados estará obligada a comparecer y a testificar, o a presentar libros, archivos, correspondencia, documentos y todo tipo de evidencia que se le requiera en cualquier investigación, procedimiento o proceso criminal relacionado con la Ley.
III
Ya hemos resaltado que debido a nuestro tamaño territorial, relación política y vivencias sociales, nuestra economía se ha caracterizado por ser relativamente reglamentada y dirigida por el Gobierno. G.G. & Supp. Corp. v. S. & F. Systs., Inc., 153 D.P.R. 861, 869 (2001). Aun cuando el devenir histórico trastoque el propósito y la intensidad del intervencionismo gubernamental con la empresa privada, no tenemos duda de lo primordial que resulta ser una *940 agencia ejecutiva dedicada a la auscultación comercial y económica en un sistema económico liberal como el nuestro. Por ello, hemos afirmado que el tipo de economía que sirvió de contexto a la aprobación de la Ley Núm. 77, supra, hace aún más necesario que los tribunales diluciden de forma flexible los conflictos que surjan bajo su cobertura. Id. Por otra parte, el que se haya establecido un criterio de interpretación flexible no significa que debemos ignorar las garantías constitucionales que protegen a todas las personas, tanto naturales como jurídicas.
Consideremos cada uno de los requisitos constitucionales aplicados a los requerimientos de información emitidos en el caso de autos. De la exposición de estatutos y reglamentos de la OAM reseñados se colige el amplio poder delegado a esta oficina para llevar a cabo sus funciones fiscalizadoras en nuestro comercio. El poder para emitir subpoenas duces tecum y subpoenas ad testificandum surge claramente de la letra de la referida Ley Núm. 77. Dicho poder expresamente otorgado se ha extendido mediante reglamentos, creados por la propia agencia para ejecutar la Ley Núm. 77 al punto en que se dispone para el mecanismo de los requerimientos de información a terceras personas naturales o jurídicas.
Hemos visto que la información requerida en el subpoena, según manda nuestra Constitución, debe estar definida. Como anteriormente discutiéramos, la vaguedad o la excesiva amplitud en el requerimiento constituyen características que convierten al subpoena duces tecum en un registro o incautación irrazonable. En el presente caso, a pesar de la amplitud del subpoena, no tenemos reparo en declararlo lo suficientemente definido y particularizado. En ello concuerdo con los foros de primera instancia y apelativo.
Ahora bien, el subpoena también debe requerir información que sea pertinente al asunto bajo investigación. La OAM ha emitido un requerimiento de información en el que expresa que está llevando a cabo una investigación sobre posibles prácticas monopolísticas en la industria del *941 cemento. Esto no es suficiente. Cuando una agencia investigativa requiera información perteneciente a un tercero como parte de una inquisición con fines penales, ésta debería expresar en el subpoena las razones para hacerle dicho requerimiento. No creo que sea suficiente que se exprese el delito o la infracción de quien es objeto de la investigación. No se puede pretender que el propósito de la investigación, así como la pertinencia y materialidad de la información solicitada se deduzca de la información requerida.
Los recurrentes son compañías que han brindado sus servicios de seguridad a la PRC y en ellos no se ha enfocado la investigación, o al menos no surge del subpoena que éstos estén bajo el escrutinio investigativo de la OAM. Como bien señala la Mayoría, al examinar detenidamente el subpoena impugnado, no surge cuál es la pertinencia de la información requerida. El expediente tampoco revela de qué manera la información requerida por la OAM es pertinente al objetivo de su investigación. Si bien es cierto que la información requerida puede ser pertinente al asunto bajo investigación por estar relacionada a la PRC, también es cierto que este subpoena con fines penales pretende descubrir información perteneciente a los recurrentes, quienes no son el objeto de la investigación.
El Tribunal de Apelaciones concluyó que la petición de los recurrentes, en cuanto a que la OAM expresara hechos particulares que establecieran la pertinencia del requerimiento era improcedente, pues un requerimiento de información no tiene que cumplir con el requisito de causa probable. No tiene razón. Exigir que se expresen en un subpoena con fines penales las razones por las cuales un tercero, quien no es el objeto de la investigación de una agencia, debe someter información propia, entre ésta contratos,(25) no implica una determinación de causa probable.
*942 A pesar de que, por norma general, los funcionarios son quienes preliminarmente determinan la pertinencia de la información requerida en una investigación administrativa, somos los tribunales quienes por mandato constitucional estamos llamados a evaluar dicha determinación ejecutiva. Los subpoenas emitidos por la OAM no nos permiten ejercer esta facultad porque carecen de los elementos mínimos atinentes a la pertinencia de lo solicitado en la investigación administrativa. Por tal razón, concurro con el resultado que acordó la Mayoría.

 En palabras del tratadista:
“If the Constitution stood in the way, as it unquestionably did, the Constitution would have to be changed. ... The Justices of the Supreme Court dutifully carried out the unmaking and the remaking.” K.C. Davis, Administrative Law Treatise, 2da ed., San Diego, K.C. Davis Pub. Co., 1978, Vol. I, pág. 299.

 Este criterio era diametralmente opuesto al que sostuvo el Tribunal Supremo estadounidense a principios del siglo pasado, cuando resolvió que una orden para producir información podría constituir un registro y allanamiento irrazonable bajo la Constitución federal. Hale v. Henkel, 201 U.S. 43, 76 (1906).

 Davis nos explica que:
“An agency with power to investigate may make an investigation that is as broad as it reasonably finds to be appropriate, but a demand for information must be relevant to the investigation and may not be broader than is reasonably necessary. The breadth of an investigation is for the investigators to determine. The breadth of a subpoena or of a search made in records may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators.” Davis, op. cit., pág. 271.

 El Tribunal Supremo de Estados Unidos le llama “constructive search”.

 Véase, también, P.N.P. v. Tribunal Electoral, 104 D.P.R. 741 (1976).

 Para fundamentar dicho dictamen recurrimos a Detweiler Bros. v. Walling, 157 F.2d 841, 843 (1946), cert. denegado, 330 U.S. 819 (1947).

 En esta ocasión decidimos como en Link v. N.L.R.B., 330 F.2d 437 (1964), donde se dijo que “es irrazonable en extremo insistir en que el resultado esté disponible antes de comenzarse la investigación”.

 Hemos reconocido que, por lo general, es la información que no se ofrece la que es de mayor pertinencia cuando se ha incurrido en prácticas ilegales. Comisionado de Seguros v. Bradley, 98 D.P.R. 21, 34 (1969), doctrina adoptada de N.L.R.B. v. United Aircraft Corporation, 200 F. Supp. 48 (1961).

 Doctrina de Donovan v. Lone Steer, Inc., 464 U.S. 408, 415 (1984).

 Véanse, además: Pueblo v. Meléndez Rodríguez, 136 D.P.R. 587 (1994); Pueblo v. Muñoz, Colón y Ocasio, 131 D.P.R. 965 (1992); Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562 (1992); Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991); Pueblo v. Malavé González, 120 D.P.R. 470 (1988); Pueblo v. Falú Martínez, 116 D.P.R. 828 (1986); Pueblo v. Dolce, 105 D.P.R. 422 (1976).

 Véase W.R. La Fave, Search and Seizure: A Treatise on the Fourth Amendment, 1ra ed., Ed. West, Suppl. 2007, Sec. 4.13, citando a Slobogin, Subpoenas and Privacy, 54 DePaul L. Rev. 805 (2005).

 Ver la Sección 22 del Artículo III de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Torno 1.

 Véase H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 964 (1993). Allí reiteramos que en el ejercicio de su facultad y deber de fiscalizar la ejecución de la política pública y a los jefes de Departamento, la Asamblea Legislativa goza de vastos poderes de investigación. Esos poderes son inseparables de la facultad de legislar. Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 590 (1983).

 Peña Clos v. Cartagena Ortiz, supra, pág. 591; Hernández Agosto v. Betancourt, 118 D.P.R. 79, 82 (1986).

 Bankers Life and Casualty Company v. McCarthy, 137 N.E.2d 398 (1956); Commissioner of Ins. v. First National Bank of Boston, 223 N.E.2d 684 (1967).

 Application of Waterfront Com. of New York Harbor, 160 A.2d 832 (1960); Pope & Talbott, Inc. v. Smith, 340 P.2d 960 (1959).

 Aun cuando las corporaciones pueden y deben estar protegidas de requerimientos ilegales hechos so pretexto de una investigación pública, éstas no pueden reclamar que se les equipare a los individuos en el disfrute del derecho a la privacidad. Ellas poseen atributos públicos. Tienen un impacto colectivo sobre la sociedad, de la cual derivan el privilegio de actuar como entidades artificiales. Los favores del Gobierno frecuentemente conllevan una mayor medida de reglamentación. Cooperativa Cafeteros P.R. v. Colón Torres, 84 D.P.R. 278 (1961).

 Véase H. Wells, La modernización de Puerto Rico (Pedro G. Salazar, trad.), Ira ed., México, Ed. Universitaria, 1972.

 Nos parece pertinente, para comprender el marco histórico dentro del cual se promulgó dicha ley, recordar las palabras de E.L.A. v. Rosso, 95 D.P.E. 501, 529-530 esc. 10 (1967), citando al papa Juan XXIII, sobre la intervención del poder público en el campo económico:
“[E]n este campo deben estar activamente presente los poderes públicos ‘a fin de promover debidamente el desarrollo de la producción en función del progreso social en beneficio de todos los ciudadanos.’ Su acción debe inspirarse en el principio de su misión subsidiaria. Los poderes públicos, responsables del bien común, deben sentirse obligados ‘a desenvolver en el campo económico una acción multiforme, más vasta, más profunda y más orgánica, como también a ajustarse a este fin en las estructuras, en las competencias, en los medios y en los métodos.’
“Pero se afirma el principio que la presencia del Estado en el campo económico, por dilatada y profunda que sea, no se encamina a empequeñecer la esfera de la libertad en la iniciativa de los ciudadanos particulares, sino antes a garantizar a esa esfera la mayor amplitud posible, ‘tutelando efectivamente, para todos y cada uno, los derechos esenciales’ de la persona, lo cual implica que en los sistemas económicos esté permitido y facultado el libre desarrollo de las actividades de producción. Donde falta la iniciativa personal de los particulares hay estancamiento de los sectores económicos destinados a producir tanto los bienes de consumo y de servicios de las necesidades materiales, sino también los de las exigencias del espíritu. ‘Por otro lado, donde falta o es defectuosa la debida actuación del Estado, reina un desorden irremediable, abuso de los débiles por parte de los fuertes menos escrupulosos, que arraigan en todas las tierras y en todos los tiempos, como la cizaña entre el trigo.’ ”

 18 Diario de Sesiones de la Asamblea Legislativa 1425 (1964).

 15 U.S.C.A. secs. 1-7.

 15 U.S.C.A. secs. 12-19 y 21-27; 29 U.S.C.A. sees. 52-53.

 El Artículo 12 de la Ley Núm. 77 de 25 de junio de 1964 (10 L.P.R.A. see. 268), al utilizar el término “persona perjudicada” se refiere a “aquella persona natural o jurídica que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos, o intentos de actos, prohibidos o declarados ilegales” por la Ley Núm. 77. Es decir, de una lectura íntegra de los cuerpos legales bajo estudio, el Artículo 16(a)(1) de la Ley Núm. 77, supra, 10 L.P.R.A. see. 272, sólo autoriza la investigación de las relaciones comerciales de la persona afectada por las prácticas monopolísticas del querellado.

 Ver escolio 22 de esta opinión.

 Como es sabido, un contrato contiene la expresión de la voluntad de los contratantes. Aun cuando reconocemos que a las corporaciones no les cobija el derecho a no incriminarse contenido en la Sección 11 del Artículo II de nuestra Constitución, L.P.R.A., Tomo 1, sólo estamos exigiendo la expresa pertinencia de la información de un tercero que no ha sido identificado como el objeto de una investigación administrativa.